UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOSE T. VASQUEZ, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 17-cv-02194 (APM) |
| DISTRICT OF COLUMBIA, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

This case arises from the detention of Plaintiff Jose T. Vasquez by the District of Columbia Metropolitan Police Department ("MPD") based on mistaken identity. Authorities in Will County, Illinois, erroneously entered Plaintiff's personal information into a warrant database accessible to law enforcement nationwide. Pursuant to the erroneous entry, MPD detained Plaintiff in October 2016 and again in March 2017 for a total of twelve nights—eleven nights the first time, one night the second time. Plaintiff filed suit against the District of Columbia on October 23, 2017, alleging various common law tort and constitutional claims, which the court dismissed without prejudice due to a fundamental error in the Complaint confusing the United States Attorney's Office for the District of Columbia. Plaintiff then filed a Second Amended Complaint.

The District of Columbia once again moves to dismiss all claims. For the reasons set forth below, Defendant's Motion to Dismiss is denied in part and granted in part.

## II. BACKGROUND

### A. Factual Background

Plaintiff's Second Amended Complaint alleges the following facts. In 1979, Will County, Illinois, issued a warrant of arrest, identifying a murder suspect as having six aliases. Second Am. Compl., ECF No. 40 [hereinafter Second Am. Compl.], ¶¶ 23–24. "Jose Vasquez" was one of the aliases. *Id.* ¶ 24. The Will County Circuit Court issued a failure-to-appear warrant in 1996, which matched the 1979 warrant but did not include information about the suspect's aliases. *Id.* ¶ 26. After a 2005 warrant review, a court cancelled the 1996 warrant and issued a new one. *Id.* ¶ 27. The new warrant contained the suspect's alleged name, date of birth, and sex; it did not include a Social Security number, driver's license number, or physical descriptors. *Id.* When entering the new warrant in a statewide database, instead of entering the new warrant as written, the Will County Sheriff's Office searched for a person with the name "Jose Vasquez" and an August 25, 1957 birthdate, which returned a profile for Plaintiff. *Id.* ¶ 29. The Will County Sheriff's Office then entered the new warrant into the state database using Plaintiff's personal information. *Id.* The Illinois database entry updated automatically to the National Crime Information Center ("NCIC") database, making the warrant available to law enforcement nationwide. *Id.* ¶ 30.

MPD first arrested Plaintiff during a traffic stop on October 23, 2016 ("October detention"). *Id.* ¶ 37. After pulling Plaintiff over, MPD Officer Terence Sutton conducted an NCIC query that returned the 2005 NCIC entry. *Id.* An MPD dispatcher contacted Will County, which confirmed that it had an outstanding extradition warrant for Plaintiff. *Id.* Plaintiff was arraigned on October 24 and jailed pending an extradition hearing. *Id.* ¶ 41. Throughout his detention—lasting from October 23 to November 3, 2016—Plaintiff proclaimed his innocence, noting that previous arrests in Maryland had resulted in his release once Maryland officials

confirmed that Plaintiff was not the suspect wanted by the warrant. *Id.* ¶¶ 40, 47–48. On October 28, 2016, Plaintiff's counsel submitted a motion for a bond review hearing, explaining that Plaintiff was held based on mistaken identity. *Id.* ¶ 45.

That same day, MPD Officer Augusto Ruben emailed a photo of Plaintiff to the Will County Sheriff's Office. *Id.* ¶ 42. At 11:48 a.m. Central Time, the Will County Sheriff's Office sent a notice to the MPD Fugitive Unit: "release any holds you have on him for county, the person your [sic] holding is not the same person we are looking for[.]" *Id.* ¶ 43 (internal quotation marks removed). Despite this instruction, Plaintiff remained detained. *Id.* ¶¶ 44, 47–48.

At a hearing on November 2, 2016, the court instructed Assistant U.S. Attorney ("AUSA") Robert Little to "look into a photograph of the person wanted in the demanding jurisdiction." *Id.* ¶ 45 (internal quotations omitted). AUSA Little's assistant contacted Illinois authorities, who confirmed that Plaintiff was not the subject of the warrant. *Id.* ¶ 46. On November 3, 2016, upon motion by the U.S. Attorney's Office, the court dismissed charges against Plaintiff and released him. *Id.* ¶¶ 47–48. The U.S. Attorney's Office informed MPD of the dismissal and of the fact that Plaintiff was not the person sought by the Illinois warrant. *Id.* ¶ 49.

Days later, Plaintiff was arrested in Maryland on the same erroneous warrant. *Id.* ¶¶ 51, 53. After this arrest, Will County authorities replaced Plaintiff's Social Security number with the true suspect's Social Security number in its warrant entry, thereby updating the NCIC database. *Id.* ¶ 51.

Plaintiff's second MPD detention ("March detention") occurred on March 3, 2017—the result of a traffic stop by a U.S. Secret Service officer. *Id.* ¶ 55. After the arresting officer received an NCIC hit, the U.S. Secret Service's Joint Operations Center contacted Will County, which confirmed the warrant. *Id.* The officer arrested Plaintiff, injuring him in the process. *Id.* ¶ 56.

Plaintiff was treated for neck and shoulder injuries at a local hospital, transported to MPD's Second District Station, and detained overnight. *Id.* ¶ 57.

The next day, Officer Leroy Rollins of the MPD Fugitive Unit executed an affidavit stating that he had "verified" Plaintiff as the person sought by the 2005 warrant. *Id.* ¶ 58 (quotation marks in original). The U.S. Attorney's Office commenced a fugitive action based on Officer Rollins's affidavit, and Plaintiff was arraigned on March 4, 2017. *Id.* ¶¶ 60, 62. At the arraignment, the court dismissed the charges against Plaintiff after his counsel explained that he was not the subject of the warrant. *Id.* ¶ 62.

**B.     Procedural Background**

In November of 2018, this court dismissed Plaintiff's First Amended Complaint without prejudice. *See Vasquez v. Cty. of Will, et al.*, No. 17-cv-02194 (APM), 2018 WL 5983386 (D.D.C. Nov. 14, 2018). Each of Plaintiff's claims—unlawful arrest, malicious prosecution, negligence, and constitutional violation pursuant to 42 U.S.C. § 1983—required the District of Columbia, through the MPD, to have known about the flawed NCIC entry. *See id.* at *4. Plaintiff alleged the District knew of the entry's errors because it directed and eventually dismissed fugitive proceedings against Plaintiff in November 2016. But the United States—not the District—directed those proceedings. *See id.* at *3. Absent allegations of District knowledge, the court held, Plaintiff's claims could not survive a motion to dismiss. *See id.* at *4.

On November 28, 2018, Plaintiff filed a Second Amended Complaint. *See* Second Am. Compl. Defendant District of Columbia moved to dismiss on December 21, 2018. *See* Def.'s Mot. to Dismiss, ECF No. 47 [hereinafter Def.'s Mot.].

4

### III. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). When reviewing a motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations need not be "detailed," but they must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"The court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States,* 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### IV. DISCUSSION

The threshold question for the court is whether Plaintiff's Second Amended Complaint cures the fundamental defect of the first. It does. The First Amended Complaint lacked allegations that would allow the court to infer knowledge of the erroneous NCIC entry by the District of Columbia through the MPD. Plaintiff's new pleading rectifies that deficiency by introducing two new allegations, which the court must treat as true. First, Plaintiff alleges that Will County

authorities sent a notice to the MPD Fugitive Unit during Plaintiff's October detention advising that Plaintiff was not the person sought by the 2005 warrant. *See* Second Am. Compl. ¶ 43; *see also* Def.'s Mot., Ex. 1, ECF No. 47-3. Second, Plaintiff alleges that after his release in October 2016, the U.S. Attorney's Office informed MPD that it had dismissed Plaintiff's extradition charges because he was not the warrant's subject. *See* Second Am. Compl. ¶ 49. These allegations are sufficient at the motion-to-dismiss stage to establish the District's knowledge of the incorrect NCIC entry.

With the initial defect cured, the court turns to Plaintiff's causes of action. For the reasons set forth below, Plaintiff has alleged sufficient factual content to state plausible claims of false imprisonment (Count I) and malicious prosecution (Count II) against the District of Columbia, and a plausible claim under 42 U.S.C § 1983 (Count IV) against MPD Officer "John Doe 2." As to these counts, Defendant's Motion to Dismiss is denied. The court grants Defendant's Motion to Dismiss as to Plaintiff's negligence (Count III) and *Monell* (Count V) claims against the District.

### A. False Imprisonment (Count I)

Plaintiff alleges that his March 2017 detention constitutes false imprisonment[1] on the theory that MPD lacked probable cause to detain him, notwithstanding the NCIC entry indicating an outstanding arrest warrant. The elements of false imprisonment are: "(1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *See Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911–12 (D.C. Cir. 2015). Probable cause, whether "in a constitutional sense" or based on a "good faith, reasonable belief in

---

[1] Plaintiff identifies Count I as a "false arrest/imprisonment" claim, yet he focuses exclusively on the March 2017 arrest. *See* Second Am. Compl. ¶¶ 66–70. Because the U.S. Secret Service arrested Plaintiff in March 2017, and not the MPD, *see id.* ¶ 55, the court addresses Count I as a false imprisonment claim. In any event, under District of Columbia law, the analysis is the same for false arrest and false imprisonment claims. *See Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911–12 & n.2 (D.C. Cir. 2015).

the validity of the arrest and detention," is a defense to a claim of false imprisonment. *See Gabrou v. May Dep't Stores Co.*, 462 A.2d 1102, 1104 (D.C. 1983).

In this case, both parties agree Plaintiff was restrained against his will. *See* Second Am. Compl. ¶ 40; *see also* Def.'s Mot., Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, ECF No. 47-1 [hereinafter Def.'s Mem.], at 7–10 (not disputing restraint element). Their dispute turns on whether the restraint was lawful.

Whether MPD had probable cause to hold Plaintiff in March 2017 is a close question. At this stage, however, because the court must draw all reasonable inferences in favor of Plaintiff, the court finds that Plaintiff has pleaded facts that make it plausible MPD did not have probable cause to detain him. To start, the court acknowledges the D.C. Circuit's unpublished, per curiam summary affirmance in *Swinson v. D.C. Metropolitan Police Department*, in which the court held that an NCIC hit supplied probable cause for the plaintiff's arrest. *See* No. 09-5202, 2010 WL 288798, at *1 (D.C. Cir. Jan. 7, 2010). In *Swinson*, the underlying warrant was valid, and the plaintiff did not claim that MPD had any reason to believe otherwise. Here, by contrast, Plaintiff alleges facts supporting the inference that MPD knew Plaintiff was not the subject of the NCIC entry, thereby arguably negating probable cause. *See* Second Am. Compl. ¶¶ 43, 49. Plaintiff alleges that the MPD Fugitive Unit received a message from Will County on October 28, 2016, informing it that Plaintiff was not the subject of the warrant, and yet the MPD took no action to release him. *Id.* ¶¶ 43, 44. Further, a few months later in March 2017, another officer in that very same unit executed an affidavit that triggered fugitive proceedings against Plaintiff and his overnight detention. *Id.* ¶ 58. These allegations, if true, plausibly negate probable cause supplied by the NCIC hit. The court, therefore, denies Defendant's Motion to Dismiss Count I.

## B. Malicious Prosecution (Count II)

Next, Plaintiff claims that the District maliciously initiated a fugitive case against him in light of MPD's alleged knowledge that "Plaintiff was not the fugitive sought" by the Illinois warrant. Second Am. Compl. ¶¶ 72–73. "Under District of Columbia law, there are four elements to the tort of malicious prosecution: (1) termination of the underlying suit in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as a result of the original action." *Pitt v. Dist. of Columbia*, 491 F.3d 494, 501 (D.C. Cir. 2007) (citing *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). As with false imprisonment, probable cause is a valid defense for malicious prosecution. *See Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978). In this context, probable cause depends "upon the honest belief of the person instituting it. It may flow from a belief that turns out to be unfounded as long as it is not unreasonable." *Id.* at 640.

With respect to the element of "lack of probable cause for the underlying suit," as the court already has held, Plaintiff alleges facts supporting that MPD knew it lacked probable cause for his March detention based on information it received from Will County months earlier. The court therefore turns to the remaining three elements, each of which Defendant contends Plaintiff has failed to plead sufficiently.

### 1. Termination in Plaintiff's Favor

The D.C. Court of Appeals has explained as follows with respect to the element of a favorable termination:

> If [the termination] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, . . . it does not constitute favorable termination.

*Brown v. Carr*, 503 A.2d 1241, 1245–46 (D.C. 1986) (citation omitted). "While this approach does not require a termination following trial on the merits, the termination must reflect on the merits of the underlying action." *Id.* at 1245 (citation omitted); *see also Kenley v. Dist. of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015) (finding mere allegation that charges were dismissed without rationale for dismissal was "insufficient to plead that underlying case was favorably terminated").

Here, the United States dismissed the extradition proceeding against Plaintiff in May 2017 because he was not the subject of the Illinois warrant. *See* Second Am. Compl. ¶ 62. Plaintiff, therefore, has adequately alleged that the underlying suit terminated in his favor.

  2. *Malice*

With respect to the element of malice, "[t]he plaintiff need not prove 'actual malice' [evinced by evil, wrongful, or improper motive] to satisfy this requirement. Rather, the requisite malice can be established from the existence of a willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff." *Tyler v. Cent. Charge Serv., Inc.*, 444 A.2d 965, 969 & n.10 (D.C. 1982) (citation omitted). "The determination of malice is exclusively for the factfinder." *Pitt*, 491 F.3d at 504 (internal quotations omitted). The Second Amended Complaint puts forth sufficient facts to infer malice. Plaintiff alleges that the same MPD unit that detained him in March had received written confirmation from Illinois authorities the prior October that Plaintiff was not the person sought by the NCIC entry. *See* Second Am. Compl. ¶¶ 42–43, 58. Plaintiff also states that he continuously protested his innocence from the time of his apprehension by U.S. Secret Service through his overnight detention at MPD's Second District Station. *Id.* ¶ 61. Taking these facts in the light most favorable to Plaintiff, a reasonable factfinder could plausibly find that Defendant

acted with "willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff." *Tyler*, 444 A.2d at 969.

       3.     *Special Injury*

The D.C. common law tort of malicious prosecution requires that plaintiffs suffer "special injury." Under District of Columbia law, "special injury" includes arrest. *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002); *see also Blakeney v. O'Donnell*, 117 F.Supp.3d 6, 20 (D.D.C. 2015). Having alleged a wrongful detention in March 2017, Plaintiff easily satisfies this element.

Citing *Mehari v. Dist. of Columbia*, 268 F. Supp. 3d 73 (D.D.C. 2017), Defendant argues that "special injury" requires detention after initiation of a criminal proceeding, which Plaintiff cannot show as he was released at arraignment. *See* Def.'s Mem. at 13. *Mehari*, however, addressed a constitutional violation under Section 1983 when it found no special injury because the plaintiff was dismissed at arraignment. *Mehari*'s observation did not concern special injury for purposes of a common law tort. *Cf. Kenley*, 83 F. Supp. 3d at 43 (observing that Fourth Amendment § 1983 malicious prosecution claim proceeds under a different standard than D.C. common law).

             \*       \*       \*

Taken together, Plaintiff has pleaded facts supporting a plausible inference that the District of Columbia initiated an extradition proceeding with malice and without probable cause, that the action terminated in his favor, and that he suffered special injury. Defendant's Motion to Dismiss is therefore denied as to Count II.

### C. Section 1983 Claim against John Doe 2 (Count IV)

Plaintiff asserts a Section 1983 claim against John Doe 2, the MPD Fugitive Unit employee who purportedly received Will County's October 28, 2016 teletype.[2] To establish a section 1983 individual-capacity claim, a plaintiff must allege that the official, (1) "acting under color of state law," (2) "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In his Second Amended Complaint, Plaintiff alleges that John Doe 2 caused his wrongful detention for six days, in violation of the Fourth Amendment, by failing to affect his release following the MPD Fugitive Unit's receipt of information from Will County that Plaintiff was not the subject of the NCIC entry. *See* Second Am. Compl. ¶¶ 43–44. That allegation suffices at this stage to state a Section 1983 claim against John Doe 2.

Defendant asserts that John Doe 2 is entitled to qualified immunity. Qualified immunity is an affirmative defense that must timely be raised by a defendant. *Gomez v. Toledo*, 446 U.S. 635, 639–41 (1980). Here, Defendant raised the defense for the first time in its reply brief, therefore the court does not consider it at this stage. The court denies Defendant's Motion to Dismiss Count IV.

### D. Negligence (Count III)

Plaintiff's negligence claim rests on the assertion that the District of Columbia has a duty to "guard against detaining citizens on known constitutionally infirm warrants," a duty it breached by failing to take "reasonable steps" to prevent Plaintiff's March detention. Second Am. Compl.

---

[2] Plaintiff's Second Amended Complaint confusingly describes Count IV as a "Monell claim under the Fourth Amendment" "Against John Doe 2." *See* Second Am. Compl. at Count IV (heading); *see also Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (addressing municipal liability). Plaintiff clarifies in his Opposition that "the specific allegations within the claim make clear that [Count IV] is a claim against an individual." Pl.'s Opp'n to Def.'s Second Mot. to Dismiss, ECF No. 48, at 25. Accordingly, this court evaluates Count IV as a claim against John Doe 2 in his or her individual capacity.

¶ 78. This allegation, however, is defeated by the "public duty doctrine." *See Woods v. Dist. of Columbia*, 63 A.3d 551, 553 (D.C. 2013).

"Absent a special relationship between the District and an individual, no specific legal duty exists, and a suit against the District based on a claim of simple negligence will fail as a matter of law." *Id.* (citing *Warren v. Dist. of Columbia*, 444 A.2d 1, 3, 4 (D.C. 1981)) (cleaned up). To defeat the public duty doctrine, the injured party must allege the District owed him a special duty not owed to the general public. *Id.* A "special relationship" is established by application of a two-part test. *Id.* The D.C. Court of Appeals has offered different formulations of the first element, *see id.*, but at bottom a plaintiff must establish that a government agency or official specifically undertook to protect the plaintiff, *see Morgan v. Dist. of Columbia*, 468 A.3d 1306, 1314 (D.C. 1983), or had direct and continuing contact with the plaintiff, *see Snowder v. Dist. of Columbia*, 949 A.2d 590, 604 (D.C. 2008) (finding that filing a car theft report, calling MPD every two days after the theft, and receiving verbal assurance from the officer that MPD would contact plaintiff when the car was recovered established "direct and continuing contact"). Second, the injured party must justifiably rely on the government's undertaking. *See Woods*, 63 A.2d at 553; *see also Taylor v. Dist. of Columbia,* 776 A.2d 1208, 1214–15 (D.C. 2001). Justifiable reliance is shown by governmental "affirmative acts" that "worsen[ed] the [plaintiff's] condition." *Snowder*, 949 A.2d at 604. A plaintiff cannot satisfy the second element merely by alleging government inaction or futile action. *See id.*

Here, Plaintiff fails to allege facts plausibly supporting a special relationship with MPD. First, Plaintiff does not allege he had *any* contact with MPD after the United States dismissed the extradition proceedings against him in November 2016. Nor does he allege that he received assurances that MPD would protect him from future arrest. *See generally* Second Am. Compl.;

*see also Snowder*, 949 A.2d at 604. Moreover, Plaintiff does not allege any "acts of affirmative negligence" that directly worsened his condition but merely that the District failed to act to prevent his subsequent detention. *See* Second Am. Compl. ¶ 78.

Plaintiff argues that the public duty doctrine does not apply because MPD's negligent conduct consisted of affirmative actions directed at Plaintiff. *See Liser v. Smith*, 254 F. Supp. 2d 89, 102 (D.D.C. 2003) (finding MPD not shielded by public duty doctrine where its own erroneous press release naming plaintiff as a murder suspect caused injury). That argument contradicts Plaintiff's own pleading, however, which only alleges inaction. Plaintiff avers that the "District of Columbia's failure to take such reasonable steps caused Plaintiff Vasquez to be booked and forced to spend another night in jail . . ." Second Am. Compl. ¶ 79. Such a "failure to protect" allegation is squarely covered by the public duty doctrine, absent a showing of a special relationship, which Plaintiff has failed to do. The court grants Defendant's Motion to Dismiss Count III.

### E. Section 1983 *Monell* Claim (Count V)

At last, the court arrives at Plaintiff's Section 1983 claim against the District of Columbia. Municipalities are liable for actions of their employees under Section 1983 when those employees act pursuant to municipal policy or custom. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). To state a claim for municipal liability, a plaintiff must first demonstrate that he suffered an underlying constitutional violation. *See Baker*, 326 F.3d at 1306. The District concedes this element. *See* Def.'s Mem. at 16. Second, a plaintiff must allege facts showing that municipal policy or custom caused the violation, which can be shown in three ways: (1) the municipality "explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren v. Dist. of Columbia*,

353 F.3d 36, 39 (D.C. Cir. 2004) (quoting *Monell*, 436 U.S. at 694); (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* at 39 (citation omitted); or (3) the municipality "fail[ed] to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations," *Baker*, 326 F.3d at 1306 (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989)). Here, Plaintiff asserts the first and third bases for municipal liability, arguing that MPD affirmatively developed or sanctioned policies[3] exhibiting deliberate indifference to Plaintiff's constitutional rights, Second Am. Compl. ¶ 89, and that it failed to train its officers to "prevent further constitutional violations," *id.* ¶ 90.

Nothing in the Second Amended Complaint offers factual content supporting Plaintiff's first theory that MPD explicitly adopted a policy that caused the violation of his constitutional rights. The closest Plaintiff comes is Paragraph 89 of the Second Amended Complaint, which recites that MPD "developed, implemented, enforced, encouraged, and/or sanctioned policies, practices, and/or customs" evincing deliberate indifference. *Id.* ¶ 89. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Plaintiff's failure-to-train theory is also flawed. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citations and quotation marks omitted). To argue that MPD was deliberately indifferent to the need to train its officers in preventing detention due to misidentification, Plaintiff must allege facts showing that

---

[3] Later, Plaintiff asserts that "the District of Columbia has *not* developed any policies . . . to ensure that an individual is not detained for an unreasonable amount of time due to misidentification." Second Am. Compl. ¶ 91 (emphasis added). The court treats Paragraph 91 as part of Plaintiff's failure-to-train theory.

14

MPD was on actual or constructive notice of a "pattern of similar constitutional violations." *Id.* at 62 (finding four other *Brady* violations resulting in reversal did not amount to a "pattern" where reason for plaintiff's reversal turned on different evidence). Plaintiff's one-time detention in October 2016 does not amount to a pattern. *See City of Oklahoma City. v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). Furthermore, Plaintiff does not specifically identify how MPD's training was deficient. *See generally* Second Am. Compl. ¶¶ 88–91.

In short, as to both of his theories of Section 1983 municipal liability, Plaintiff merely restates the elements without sufficient factual allegations. The court therefore dismisses Count V against the District of Columbia.

V.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is denied as to Counts I, II, and IV. The Motion is granted as to Counts III and V.

Dated: July 12, 2019

Amit P. Mehta
United States District Judge