**REDACTED VERSION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSE T. VASQUEZ,
6520 Rosalie Lane
Riverdale, MD 20737

Plaintiff,

v.

COUNTY OF WILL, ILLINOIS;
Office of Will County Clerk
302 North Chicago Street
Joliet, IL 60432

CITY OF JOLIET, ILLINOIS;
City Clerk's Office
150 W. Jefferson Street
Joliet, IL 60432

JOHN DOE, individually and in his capacity as an employee of the Will County Sheriff's Office and/or Joliet Police Department;
Address: Unknown

DISTRICT OF COLUMBIA;
Office of the Mayor
1350 Pennsylvania Ave NW
Washington, DC 20004

OFFICER RUBEN AGOSTO, individually and in his capacity as an employee of the District of Columbia
300 Indiana Avenue, NW
Washington, DC 20001

Defendants.

**REDACTED VERSION**

Case No. 1:17-cv-02194-APM

**JURY TRIAL DEMANDED**

**THIRD AMENDED COMPLAINT**

**REDACTED VERSION**

1. Plaintiff Jose T. Vasquez, a Maryland resident, has been arrested and jailed repeatedly – not because of anything he did or didn't do, but because defendants Will County, Illinois ("Will County") and the City of Joliet, Illinois ("Joliet") issued a defective and constitutionally infirm warrant for a suspect wanted in Illinois on a murder charge that listed (erroneously) "Jose Vasquez" as the suspect's name; because Will County and Joliet then compounded the error by entering the warrant into a nationwide law enforcement database with Plaintiff Vasquez's Social Security Number rather than the murder suspect's Social Security Number; because the District of Columbia's Metropolitan Police Department ("MPD") failed properly to ascertain whether plaintiff Jose T. Vasquez was the person wanted on the Will County fugitive warrant; because MPD and Officer Ruben Agosto allowed plaintiff Jose T. Vasquez to remain incarcerated for seven days after Will County informed MPD and Officer Agosto that plaintiff Jose T. Vasquez was not the person wanted in the fugitive warrant; and because the MPD arrested and incarcerated plaintiff Jose T. Vasquez again even after it became aware of the defective nature of the database entry and the fact that plaintiff Jose T. Vasquez was not the subject of any outstanding Illinois warrant (or any other warrant). As a result of defendants' actions and inactions, plaintiff Jose T. Vasquez lost his job and suffered incredible humiliation. This action seeks recompense for defendants' repeated malfeasance and constitutional deprivations.

**SUMMARY OF ALLEGATIONS**

2. Between June 2005 and March 2017, Plaintiff Vasquez suffered multiple arrests based on an invalid warrant and National Crime Information Center ("NCIC") database record and was detained without probable cause for at least twelve days. For at least twelve years, Plaintiff Vasquez lived in constant fear of being re-arrested for a crime he never committed in a state in which he has never set foot.

**REDACTED VERSION**

3. Will County and/or Joliet issued the unconstitutional warrant that caused the repeated violations of Plaintiff Vasquez's constitutional rights. The warrant, issued in 2005 for failure to appear, related to a 1979 murder warrant. The database entry for the 1979 warrant listed no fewer than six different aliases allegedly used by the subject of the warrant, none of which matched the social security number listed on the warrant. Along with the six aliases Will County and/or Joliet listed in the 1979 warrant database entry was the name "Jose Vasquez." This faulty warrant and database entry underpinned the constitutionally infirm 2005 warrant naming the wrong person and the erroneous database entry that wrongly included Plaintiff Vasquez's Social Security Number. The Will County Sherriff's Office input the false information into the NCIC system – a national crime database – and failed to take action to modify or delete the erroneous entry, despite being on notice of the problem.

4. MPD arrested Plaintiff Vasquez on the Illinois warrant on October 23, 2016. Despite Plaintiff Vasquez's continual protestations that he was not the person being sought and despite information in the NCIC database indicating that Plaintiff Vasquez was not the person sought by Will County, MPD neglected to provide Plaintiff Vasquez's Social Security Number to Will County in the process of "confirming" the warrant and failed to ensure that they had arrested the correct suspect until ordered by a judge to do so – ten days into Plaintiff Vasquez's incarceration.

5. On October 28, 2016, Officer Ruben Agosto of MPD's Fugitive Unit sent fingerprints and a photograph of Plaintiff Vasquez to the Will County Sheriff's Office. Less than three-and-a-half hours later, the Will County Sheriff's Office responded to MPD will a teletype message addressed to MPD's Fugitive Unit stating, with respect to Plaintiff Vasquez, "PLEASE RELEASE ANY HOLDS YOU HAVE ON HIM FOR COUNTY, THE PERSON YOUR [sic]

HOLDING IS NOT THE SAME PERSON WE ARE LOOKING FOR." Due to a combination of shocking indifference and inattention by Officer Agosto and MPD policies and procedures that made it virtually certain that the message would not be acted upon in a timely manner, the message languished at MPD until November 3, 2016, when it finally came to Officer Agosto's attention. During the time this exonerating information was in the possession of MPD, Plaintiff Vasquez remained incarcerated.

6. Despite being aware that Plaintiff Vasquez was not the person wanted on the Will County fugitive warrant, and despite being aware that Plaintiff Vasquez had been wrongfully incarcerated for 11 days, the District of Columbia undertook no steps to ensure Plaintiff was not unlawfully detained on the warrant again. Four months after detaining Plaintiff Vasquez in 2016, the MPD again detained Plaintiff Vasquez in March, 2017, on the same warrant. The District of Columbia incarcerated Plaintiff Vasquez for another night, without probable cause.

## JURISDICTION AND VENUE

7. This actions arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983, as well as Illinois and District of Columbia law. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 1367.

8. This court has personal jurisdiction over the District of Columbia and John Doe because the acts or omissions giving rise to the claims asserted herein against them occurred in the District of Columbia. Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 because a substantial part of the events and the injuries giving rise to the claim occurred in the District of Columbia.

## PARTIES

9. Jose T. Vasquez ("Plaintiff") is a resident of the State of Maryland and is over the

**REDACTED VERSION**

age of eighteen (18).

10. The City of Joliet is a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Joliet maintained, managed, and/or operated the Joliet Police Department.

11. Will County is a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, Will County maintained, managed, and/or operated the Will County Sheriff's Office.

12. Upon information and belief, Defendant John Doe is a resident of Illinois and is over the age of eighteen (18). At all times material hereto, said Defendant was a LEADS operator and/or employee of the Will County Sheriff's Office, Joliet Police Department, and/or an affiliating agency and was acting under color of state law at all times. Defendant John Doe is being sued in his individual and official capacity. Defendant's true identity is currently unknown to Plaintiff, and Plaintiff reserves the right to amend this Complaint to name him as a defendant as soon as his identity is ascertained.

13. Defendant District of Columbia is a municipal corporation organized under the Constitution and laws of the United States. The District of Columbia operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia acted through its agents and employees, including Defendant Officers Ruben Agosto, Terence Sutton, Ernest Cole, Jr., Leroy Hollins, and employees of the Teletype Unit.

14. Officers Ruben Agosto, Terence Sutton, Ernest Cole, Jr., Leroy Hollins were, at all relevant times, employees of the District of Columbia and police officers with the MPD.

## STATEMENT OF FACTS

### The LEADS and NCIC System

15. The Illinois Law Enforcement Agencies Data System ("LEADS") is a statewide, computerized, telecommunications system maintained by the Illinois State Police. The information input into the system is obtained from all law enforcement agencies in Illinois. Computerized Hot Files ("CHF") are the electronic records input into the LEADS system. Warrants are one type of CHF.

16. The Will County Sheriff's Office is one of the 800 law enforcement agencies within the state that use LEADS. According to the Will County Sheriff's website, "[t]he warrant office is responsible for the entering and maintaining of all warrants issued in Will County… The warrant office enters all warrants into the state and nationwide computer systems and as such is responsible for the information provided."

17. Law enforcement agencies in Illinois that want to participate in using LEADS, must comply with regulations in Illinois' Administrative Code, 20 Ill. Admin. Code §§ 1240.10-1240.140. These regulations set out very specific actions that the agencies must take.

18. The regulations contain a number of provisions regarding agencies' responsibilities regarding inputting CHFs and ensuring they are valid, "as promptness in entering, modifying, voiding, and cancelling records is essential to maintaining the integrity of the LEADS files." 20 Ill. Admin. Code § 1240.70(b). In order to enter a LEADS record and for it to be considered valid, it must be supported by an investigative document, active warrant, or complaint. 20 Ill. Admin. Code §§ 1240.60(a)(2), 1240.70(a). An invalid record must be immediately removed. 20 Ill. Admin. Code §§ 1240.60(a)(5), 1240.70(b).

19. Each agency is responsible for the accuracy of the records entered under its authority and must participate in LEADS record quality-control activities. 20 Ill. Admin. Code

§§ 1240.60(a)(5), 1240.70(c).

20. The agency that inputs the LEADS record also must "respond to inquiries of confirmation from other agencies relative to the validity and currency of its LEADS records…" 20 Ill. Admin. Code § 1240.60(a)(7). The agency that input the LEADS record must have the underlying investigative document, active warrant, or complaint available to it on a 24-hour-per-day basis "for purposes of confirmation, quality control, validation, record maintenance, etc." 20 Ill. Admin. Code § 1240.60(a)(2).

21. The information entered into LEADS is automatically transmitted to the National Crime Information Center ("NCIC"), a national electronic database of crime data operated by the Federal Bureau of Investigation. The NCIC is accessible by virtually every criminal justice agency nationwide, and includes "wanted person files" identifying person for whom there is an open warrant. As the NCIC's website explains, by way of example, law enforcement officers "search NCIC during a traffic stop to determine if the vehicle in question is stolen or if the driver is wanted by law enforcement. The system responds instantly."

**Origin of the Erroneous Warrant and LEADS Entry**

22. On July 5, 1979, the Will County, Illinois, Circuit Court executed a Criminal Complaint and Warrant of Arrest against a suspect (the "Suspect") identified in the warrant as Jose Vasquez for the murder of one Jose Luna. Two weeks later, the Circuit Court formally opened the criminal case against the Suspect on the charge of murder. The listed offense date was July 3, 1979, and the case was styled *Illinois v. Jose Vasquez*, Case No. 1979CF000317. The Criminal Complaint listed the Suspect's address as [ ] North Broadway, Joliet, Illinois 60435.

23. Upon information and belief, Will County and Joliet were not certain of the Suspect's legal name. The LEADS entry input, on information and belief, by Will County and/or

**REDACTED VERSION**

Joliet and based on the 1979 murder warrant, included, as of July, 2016, six aliases, along with the name Jose Vasquez. The LEADS entry further noted the suspect's Social Security Number as [566-06- ]. However, no one with the name Jose Vasquez is associated with that Social Security Number. Instead, that Social Security Number is linked to a Jose Tinoco, a Jose Hernandez, and a Carlos Azanedo.

24. The LEADS entry for the 1979 warrant contained some additional identifiers regarding the Suspect. It listed his birthdate as [ ]; his height as 5'7"; his weight as 145 pounds; his eye and hair color as brown; and his driver's license as Illinois license number [ ].

25. On March 22, 1996, the Will County Circuit Court issued a warrant based on the Suspect's failure to appear. The failure-to-appear warrant noted the suspect's SSN as [566-06- ]; his height as 5'6"; his weight as 140 pounds; his eye color as brown; his date of birth as August 25, 1957; and his driver's license as [ ] – all of which matched the information in the LEADS entry for the 1979 murder warrant. It did not include any information regarding the Suspect's aliases.

26. The Will County Circuit Court conducted warrant reviews in 2003, 2005, 2006, 2007, 2009, 2010, 2011, 2012, 2013, and 2015. During the court's warrant review on June 21, 2005, it ordered that the 1996 failure-to-appear warrant be quashed and that a new warrant be issued. That same day, the Will County Circuit Court issued a new warrant of arrest (the "2005 Warrant") based on the suspect's failure to appear, which notably failed to list a Social Security Number, driver's license number, height, weight, or eye color for the defendant. Instead, the warrant simply listed the Suspect's alleged name, date of birth, and sex.

27. Despite a dearth of identifiers, Will County entered the June 2005 warrant into

LEADS shortly after it was issued.

28. However, instead of entering the June 2005 warrant into LEADS as written, or consulting the previous warrants from the case, the Will County Sheriff's Department ran a search for someone with the with the name Jose Vasquez with an [ ], birthdate. When Plaintiff Vasquez's name came up, Will County Sheriff's Office used the identifiers for him when they input the information into the LEADS system. Whereas the 2005 Warrant listed only the name "Jose Vasquez," the Suspect's date of birth, and the Suspect's sex, the 2005 NCIC Entry also included descriptors and a social security number. However, instead of listing the social security number and descriptors associated with the Suspect named in the case, the 2005 NCIC Entry listed *Plaintiff Vasquez's* Social Security Number (instead of the Suspect's Social Security Number) and indicated that the Suspect was 5'2" and 165 pounds (rather than the 5'7" and 145 pounds listed for the Suspect in the original 1979 LEADS entry and much closer to the 5'4" height and 160 pound weight listed on Plaintiff Vasquez's driver's license).

29. Will County's entry of the June 2005 warrant into LEADS caused the June 2005 Warrant automatically to be entered into the NCIC database, making it available to law enforcement personnel nationwide.

30. Upon information and belief, the Will County Circuit Court became concerned about the lack of identifiers in the 2005 Warrant. During the warrant review on June 17, 2008, the court learned that the 2005 Warrant was in LEADS. At that time, the court continued the warrant review due to the lack of identifiers associated with the 2005 Warrant.

**Unlawful Arrests of Plaintiff Vasquez**

31. In or around August of 2005 – just two months after issuance of the 2005 Warrant – the County Police of Prince George's County, Maryland, arrested Plaintiff Vasquez on the

**REDACTED VERSION**

Illinois warrant entered into the NCIC database. Police in Maryland also arrested Plaintiff Vasquez on one or more other occasions prior to 2009 due to the 2005 Warrant being entered in the NCIC database. Law enforcement authorities in Maryland detained Plaintiff Vasquez pursuant to these arrests for various lengths of time, ranging from several hours to five days.

32. Upon information and belief, each time that Plaintiff Vasquez was arrested pursuant to the NCIC entry, the arresting police department followed standard NCIC procedure and contacted Will County to confirm that there was an open warrant for the arrest of Plaintiff Vasquez.

33. Will County did not seek extradition of Plaintiff Vasquez after any of the Maryland arrests. Upon information and belief, this was because Will County, after being contacted by Maryland law enforcement agencies, realized that Plaintiff Vasquez was not the Subject for whom the 2005 Warrant had been issued, or because Maryland law enforcement determined that Plaintiff Vasquez was not the Subject for whom the warrant had been issued and so informed Will County.

34. Upon information and belief, Will County received repeated notification that Plaintiff Jose Vasquez was being erroneously arrested and detained pursuant to Will County's LEADS/NCIC entries.

35. Presumably because of these repeated notifications, Will County, in or around 2013, changed the LEADS record for the original 1979 warrant, adding a "miscellaneous note" that said, "DO NOT DETAIN A VASQUEZ, JOSE [ ] SS [578-11- ] THIS IS NOT SUSPECT." The birthdate and Social Security Number in the "miscellaneous note" are those of Plaintiff Jose Vasquez.

36. On October 23, 2016, at approximately 10:35 p.m., Officer Terence Sutton of the MPD conducted a traffic stop of Plaintiff Vasquez in the 5400 block of Georgia Avenue NW, in the District of Columbia. Officer Sutton ran an NCIC query, which returned both the 2005 NCIC

**REDACTED VERSION**

entry and the amended NCIC entry for the 1979 warrant. Officer Sutton either ignored or did not take into consideration the NCIC entry that clearly stated, "DO NOT DETAIN A VASQUEZ, JOSE [ ] SS [578-11- ] THIS IS NOT SUSPECT" in arresting Plaintiff Vasquez on the Will County fugitive warrant.

37. The following day, MPD's Teletype Unit sent a "hit-and-locate" request to the Will County Sheriff's Office seeking to confirm that a "Jose Vasquez" with an [ ], birthdate was the person wanted by Will County on the fugitive warrant in the NCIC system. Despite the fact that "Jose Vasquez" is an extremely common name, and despite the note in the NCIC database stating, "DO NOT DETAIN A VASQUEZ, JOSE [ ] SS [578-11- ] THIS IS NOT SUSPECT," the Teletype Unit did not include a Social Security Number with its "hit-and-locate" request, all but ensuring that Plaintiff Vasquez would be confused with the Jose Vasquez wanted by Will County.

38. Predictably, given the lack of information provided by MPD, the Will County Sheriff's Office confirmed that "Jose Vasquez DOB/[ ]" was wanted on a valid murder warrant.

39. Based on this "confirmation," Officer Cole of the MPD Fugitive Unit executed an Affidavit in Support of the Arrest Warrant, stating therein that he "verified [the warrant] . . . through an NCIC/WALES check, advising that the warrant is active and that [Will County] will extradite."

40. Based upon Officer Cole's Affidavit, the District of Columbia commenced a fugitive criminal action, pursuant to which the Superior Court for the District of Columbia issued a warrant for Plaintiff Vasquez's arrest and presentment.

41. From the time of his arrest on October 23, 2016, until his release on November 3,

2016, Plaintiff Vasquez continuously protested his innocence and explained that he was a victim of mistaken identity.  Plaintiff Vasquez specifically explained that he had never stepped foot in Illinois and that he had previously been arrested pursuant to the Illinois warrant in Maryland, but that Maryland had determined that he was not the Suspect wanted in Illinois and had been set free.

42.     After arraignment on October 24, the D.C. Superior Court ordered that Plaintiff Vasquez be detained in jail pending an extradition hearing and his custodial return to Illinois.

43.     On the morning of October 28, 2016, Officer Agosto, an officer with the MPD, emailed the Will County's Sheriff Office a photograph of Plaintiff Vasquez as well as fingerprints of Plaintiff Vasquez.

44.     After comparing the photograph and fingerprints of the actual suspect with those of Plaintiff Vasquez, the Will County Sheriff's Office concluded that Plaintiff Vasquez was not the person sought in the 2005 warrant.  At 12:48 p.m. Eastern Time, the Will County's Sheriff Office sent a teletype notice to MPD's Fugitive Unit in reference to Plaintiff Vasquez, advising MPD to "PLEASE RELEASE ANY HOLDS YOU HAVE ON HIM FOR COUNTY, THE PERSON YOUR [sic] HOLDING IS NOT THE SAME PERSON WE ARE LOOKING FOR."

45.     MPD's Teletype Unit received the aforementioned notice from the Will County Sheriff's Office at approximately 12:48 p.m. Eastern Time on October 28, 2016.  On information and belief, the Teletype Unit made no attempt to alert the Fugitive Unit that a message had been received asking MPD to release Plaintiff Vasquez from custody.

46.     Although Officer Agosto sent Plaintiff Vasquez's photograph and fingerprints to the Will County Sheriff's Office as part of an effort to determine whether Plaintiff Vasquez was, in fact, the person wanted in the fugitive warrant, Officer Agosto made no effort to follow up with the Will County Sheriff's Office, made no effort to inquire of the Teletype Unit whether a response

had been received from the Will County Sheriff's Office, and disclaimed any further responsibility for determining whether Plaintiff Vasquez was the person wanted in the fugitive warrant.

47.    MPD procedure called for the MPD Teletype Unit to print out the notice from the Will County Sheriff's Office and to place it in a folder to be picked up at some point in the future by a member of MPD's Fugitive Unit.

48.    MPD procedure called for someone from the MPD Fugitive Unit to walk to the Teletype Unit to pick up printed-out messages in the designated folder two or three times daily. That person would then distribute the messages to the "appropriate persons" within the Fugitive Unit.

49.    MPD procedure called for the person from the MPD Fugitive Unit who picked up printed-out messages in the designated folder from the Teletype Unit to distribute the messages to the appropriate recipients.  However, MPD practices and procedures did not clearly delineate who the appropriate recipients were.  MPD's custom and practice was to direct the messages to the person who had the initial contact with the individual presumed to be wanted in connection with a fugitive warrant, rather than the person (such as Officer Agosto) who had direct communication with the out-of-District entity that had entered the warrant in the NCIC database.  Further complicating things, MPD practices and procedures called for the person who had the initial contact to disengage from the matter after running a hit-and-locate request.  As a consequence, nobody in the Fugitive Unit was the obvious recipient of teletype messages concerning persons for whom a hit-and-locate response had already been received.  This all but guaranteed that the message from the Will County Sheriff's Office would not receive timely attention (if any attention) by the MPD Fugitive Unit.

50.    Because of Officer Agosto's inattention and because MPD's policies and

procedures did not provide either direction as to whom should receive critical incoming teletype messages or a means of promptly communicating to the United States Attorney's Office and the District of Columbia Superior Court information that would release persons such as Plaintiff Vasquez from custody, MPD did not inform anyone of the message from the Will County Sheriff's Office, or of the fact that Plaintiff Vasquez was not the person wanted in the fugitive warrant, until the afternoon of November 3, 2016.

51. Consequently, Mr. Vasquez was forced to spend six days in jail *after* MPD had learned that he was not the person sought in the Will County warrant.

52. The lack of timely information flow between the Teletype Unit, the Fugitive Unit and the courts was well-known within MPD prior to October of 2016, and untimely communications pertaining to fugitive warrants were, and are, routine.

53. On information and belief, Mr. Vasquez would have spent much longer in jail had a Superior Court judge, acting on a motion by Plaintiff Vasquez's defense attorney for a bond review hearing, which motion explained that Plaintiff Vasquez was being erroneously held based on mistaken identity, not asked the United States Attorney's Office to compare photographs of Plaintiff Vasquez and the person sought in Will County – the event that, on information and belief, triggered a search within MPD that finally turned up the October 28 teletype message from the Sill County Sheriff's Office.

54. On November 3, 2016, the U.S. Attorney's Office filed a Motion to Dismiss the charges after prosecuting authorities in Illinois confirmed that Plaintiff was not the suspect. More specifically, the Motion read, "Prosecuting Authorities in Joliet, Illinois confirmed that the defendant is not the wanted person and declined to extradite the defendant."

55. The D.C. Superior Court granted the motion and dismissed the charges against

Plaintiff Vasquez.

56.     The U.S. Attorney's Office informed the MPD of the dismissal and of the fact that Plaintiff Vasquez was not the person wanted pursuant to the 2005 Warrant.

57.     As a result of his arrest and subsequent eleven-day incarceration, Plaintiff Vasquez's employer terminated Plaintiff Vasquez's employment, and Plaintiff Vasquez suffered extreme humiliation and embarrassment.

58.     The District of Columbia, having been made aware that the 2016 NCIC Entry erroneously contained Plaintiff Vasquez's social security number, failed to take any action to ensure that MPD officers and personnel would be aware of the erroneous entry and would not arrest and incarcerate Plaintiff Vasquez again based on the 2005 Warrant.

59.     The District of Columbia, having been made aware that the 2016 NCIC Entry erroneously contained Plaintiff Vasquez's social security number, that Plaintiff Vasquez was not the person wanted in the Will County warrant, that Plaintiff Vasquez had been wrongfully incarcerated for 11 days in 2016 because of MPD's failures, and that the Superior Court had dismissed charges against Plaintiff Vasquez based on the Will County warrant, failed to take any action to ensure that MPD officers and personnel would not arrest or incarcerate Plaintiff Vasquez again based on the 2005 Warrant.

60.     On or about November 16, 2016, Will County updated the 2005 warrant information in the NCIC database to include the Social Security Number of the person actually wanted instead of a Social Security Number matching that of Plaintiff Vasquez's.

61.     On March 3, 2017, at approximately 9:10 a.m., U.S. Secret Service Officer Joseph Sanford stopped Plaintiff Vasquez on 15th Street NW, in the District of Columbia, for a non-working driver's side brake light.  After initiating the traffic stop, Officer Sanford ran a check of

**REDACTED VERSION**

Plaintiff Vasquez's driver's license, which returned the 2016 NCIC Entry. The U.S. Secret Service's Joint Operations Center contacted Will County to confirm the warrant.

62. Officer Sanford arrested Plaintiff Vasquez for being a "fugitive from justice," despite Plaintiff Vasquez's earnest attempts to explain that he was not the Suspect sought in the 2005 Warrant. In the course of arresting Plaintiff Vasquez, Officer Sanford forcibly took Plaintiff Vasquez to the ground, causing injuries to Plaintiff Vasquez's neck and shoulder.

63. Aware of Plaintiff Vasquez's injuries and pain, Officer Sanford requested an ambulance, which transported Plaintiff Vasquez to George Washington University Hospital for treatment. After receiving emergency room care, Plaintiff Vasquez was transported to MPD's Second District Station and detained.

64. On March 4, 2017, as Plaintiff Vasquez remained in custody, Officer Leroy Rollins of the MPD Fugitive Unit initiated a "hit-and-locate" request with respect to Plaintiff Vasquez. Despite the fact that Officer Rollins had in his possession Plaintiff Vasquez's correct Social Security Number and the NCIC report clearly showing that the person wanted on the Will County warrant had a different Social Security Number, Officer Rollins, following MPD procedure, included only Plaintiff Vasquez's name and date of birth as personal identifiers in his "hit-and-locate" request. He did *not* include Plaintiff Vasquez's Social Security Number.

65. Predictably, based upon the only two personal identifiers provided by Officer Rollins, the "hit-and-locate" response "confirmed" that a "Jose Vasquez" with an [

], birth date was the person wanted in the warrant.

66. Based on this "confirmation," Officer Rollins executed an Affidavit swearing that he had "verified" that defendant Vasquez was the person wanted in Illinois on the 2005 Failure to Appear Warrant, despite the fact that MPD knew that a comparison of photographs of

the subject wanted in Illinois and of plaintiff Vasquez indicated that plaintiff Vasquez was not the subject of the warrant, that MPD knew of the prior dismissal of the fugitive case against defendant Vasquez, and that MPD was on notice that plaintiff Vasquez had been the victim of previous detentions based on the erroneous belief that he was the suspect wanted in Illinois.

67. Indeed, at the time he swore out his Affidavit, Officer Rollins also had in his possession a court record noting that charges against Plaintiff Vasquez related to a fugitive warrant had been dismissed the preceding November. MPD practice, however, did not involve reviewing prior court records, even thought they were in the arrest packet as a matter of course.

68. Although the social security number listed in the NCIC Entry no longer matched Plaintiff Vasquez's, upon information and belief, the MPD did not apprise the U.S. Attorney's Office of this fact or raise any question regarding the possible misidentification of plaintiff Vasquez as the suspect wanted in Illinois.

69. Based on the MPD's "verification" that defendant Vasquez was wanted in Illinois on a fugitive warrant, the U.S. Attorney's Office commenced a fugitive case against Plaintiff Vasquez, resulting in the issuance of a warrant from the D.C. Superior Court for Plaintiff Vasquez's arrest.

70. Plaintiff Vasquez again protested his innocence to MPD personnel and explained that he was not the person sought in the 2005 Warrant. The MPD again ignored Plaintiff Vasquez's protestations and forced him to spend another night in jail for a crime he did not commit.

71. At approximately 1:00 p.m. on March 4, 2017, Plaintiff Vasquez appeared for his arraignment. Plaintiff Vasquez's defense counsel pointed out to the court that just four months earlier, the MPD had arrested Plaintiff Vasquez based on the same flawed NCIC entry, and that the District of Columbia had determined that Plaintiff Vasquez was not the person for whom the 2005

Warrant was issued. The District of Columbia then dismissed the charges.

72. On March 13, 2017, Plaintiff Vasquez's defense lawyer filed a motion asking the court to require the District of Columbia to take reasonable steps to ensure that Plaintiff Vasquez did not have to suffer through a similar ordeal again. The court twice had to order the District of Columbia to respond to the motion twice before it finally responded, more than eight months later.

73. In its response, the District of Columbia informed the court that only the Will County Sheriff's Office and the Illinois State Attorney could alter the 2016 NCIC Entry or add additional identifying information. The District of Columbia's response also noted that, after Plaintiff Vasquez's second arrest by the MPD, Assistant United States Attorney Little had provided Plaintiff Vasquez a letter addressed to law enforcement officers informing them that Plaintiff Vasquez was not the same Jose Vasquez wanted in Illinois for murder. The District of Columbia's response did not discuss why such a letter was not provided to Plaintiff Vasquez sooner or why no other steps, such as entering information about Plaintiff Vasquez into the District of Columbia's own computer systems confirming that he was not the "Jose Vasquez" sought in the 2016 NCIC Entry, had been taken.

## COUNT I

False Arrest/Imprisonment
(Against District of Columbia)

74. The allegations contained in paragraphs 1- 73 are hereby incorporated into Count I as if fully set forth herein.

75. Plaintiff was arrested and detained in March 2017 based on an erroneous entry in the NCIC database, in turn based on a constitutionally infirm warrant. Therefore, Plaintiff Vasquez's arrest and detention was without probable cause and the detention was unlawful.

**REDACTED VERSION**

76. Plaintiff Vasquez's unlawful detention was effected by Correction Officers working for the District of Columbia within the scope of their employment.

77. As a result of the unlawful detention, Plaintiff Vasquez suffered a loss of liberty; suffered and will continue to suffer pain, mental anguish, embarrassment and humiliation, and loss of enjoyment of life; and sustained and will continue to sustain lost wages and/or diminished earnings capacity.

78. On August 10, 2017, Plaintiff Vasquez provided notice in writing to the Mayor of the District of Columbia regarding the approximate time, place, cause, and circumstances of the injury or damage, as required under D.C. Code § 12-309.

## COUNT II

Common Law Malicious Prosecution for March 2017 Arrest
(Against District of Columbia)

79. The allegations contained in paragraphs 1- 78 are incorporated into Count II as if fully set forth herein.

80. MPD officers, acting as employees and agents of the District of Columbia, maliciously instituted a suit against Plaintiff unsupported by probable cause, and the ensuing criminal proceedings terminated in Plaintiff's favor. The case was dismissed at the Government's request because Plaintiff was not the fugitive sought.

81. A reasonable person in the MPD officers' position would have known that the facts and circumstances were insufficient to justify a reasonable belief that Plaintiff Vasquez was the person sought in the 2005 Warrant. A cursory check would have made it clear to the MPD officers that Plaintiff Vasquez had previously been charged as a fugitive from justice based on the same warrant and that the matter had been dismissed after Will County and/or Joliet confirmed that Plaintiff Vasquez was not the suspect named in the warrant.

82. As a direct and proximate result of the MPD's unlawful actions, Plaintiff Vasquez suffered a loss of liberty; and suffered and will continue to suffer pain, mental anguish, embarrassment and humiliation, and loss of enjoyment of life, among other things. One or more of these losses constitute special injury.

83. Plaintiff Vasquez also requests an award of punitive damages based on the MPD officers' misconduct or actual malice, or such recklessness or negligence so as to evidence a conscious disregard of Plaintiff Vasquez's rights.

84. On August 10, 2017, Plaintiff Vasquez provided notice in writing to the Mayor of the District of Columbia regarding the approximate time, place, cause, and circumstances of the injury or damage, as required under D.C. Code § 12-309.

## COUNT III

Negligence
(Against District of Columbia)

85. The allegations contained in paragraphs 1– 84 are incorporated into Count III as if fully set forth herein.

86. The District of Columbia has a duty to take reasonable steps to guard against detaining citizens on known constitutionally infirm warrants, in contravention of the Fourth Amendment. After Plaintiff Vasquez's first arrest by the MPD in October 2016, the MPD failed to take reasonable actions to ensure that Plaintiff Vasquez would not be mistakenly detained by MPD officers on the erroneous warrant again.

87. The District of Columbia's failure to take such reasonable steps caused Plaintiff Vasquez to be booked and forced to spend another night in jail in March 2017, causing him to suffer pain, mental anguish, and embarrassment.

88. On August 10, 2017, Plaintiff provided notice in writing to the Mayor of the

District of Columbia regarding the approximate time, place, cause, and circumstances of the injury or damage, as required under D.C. Code § 12-309.

**COUNT IV**

42 U.S.C. § 1983 – *Monell* Claim under the Fourth Amendment
(Against Officer Ruben Agosto)

89. The allegations contained in paragraphs 1-88 are hereby incorporated in Count IV as if fully set forth herein.

90. Plaintiff Jose Vasquez was not the person wanted by the Will County Sheriff's Office.

91. At approximately 9:25 a.m. Eastern Time on October 28, 2106, MPD Officer Ruben Agosto emailed fingerprints and a photograph of Plaintiff Vasquez to Sgt. Paul Rojek of the Will County Sheriff's Office as part of an effort to determine whether Plaintiff Vasquez was, in fact, the person wanted in the Will County fugitive warrant.

92. At 12:48 p.m. Eastern Time, the Will County's Sheriff Office sent a teletype notice, authorized by Sgt. Rojek, to the attention of MPD's Fugitive Unit in reference to Plaintiff Vasquez, advising MPD to "PLEASE RELEASE ANY HOLDS YOU HAVE ON HIM FOR COUNTY, THE PERSON YOUR [sic] HOLDING IS NOT THE SAME PERSON WE ARE LOOKING FOR."

93. Despite having sent the photograph and fingerprints to Sgt. Rojek of the Will County Sheriff's Office, Officer Agosto did nothing to follow up on the request for six days.

94. Despite having sent the photograph and fingerprints to Sgt. Rojek of the Will County Sheriff's Office, Officer Agosto made no effort to follow up with the Will County Sheriff's Office, made no effort to inquire of the Teletype Unit whether a response had been received from the Will County Sheriff's Office, and disclaimed any further responsibility for

determining whether Plaintiff Vasquez was the person wanted in the fugitive warrant.

95. Despite being apprised that Plaintiff Vasquez was not the suspect sought by the county, the MPD took no steps to release Plaintiff Vasquez, despite now being on notice that he was being illegally detained in contravention to the Fourth Amendment.

96. Officer Agosto was responsible for informing the United States Attorney's Office and the Superior Court that Will County had alerted the MPD that Plaintiff Vasquez was no longer wanted by the county. In contravention of this duty, Officer Agosto took no action to inform anyone of this and took no action to ensure that Plaintiff Vasquez was not detained illegally.

97. Officer Agosto did not inform the United States Attorney's Office until the afternoon of November 3, 2016, that Will County had confirmed that Plaintiff Vasquez was *not* the person wanted in the fugitive warrant.

98. As a direct and proximate result of Officer Agosto's unlawful actions, Plaintiff Vasquez spent an additional six days in jail and suffered pain, mental anguish, embarrassment and humiliation, and loss of enjoyment of life. As a result of this unlawful 2016 detention, Plaintiff lost his job and income.

99. Plaintiff Vasquez also requests an award of punitive damages based on Officer Agosto's misconduct or actual malice, or such recklessness or negligence so as to evidence a conscious disregard of Plaintiff's rights.

## COUNT V

42 U.S.C. § 1983 –*Monell* Claim under the Fifth Amendment
Custom/Policy Regarding Incoming Teletype Messages
(Against District of Columbia)

100. The allegations contained in paragraphs 1–99 are hereby incorporated into Count V as if fully set forth herein.

**REDACTED VERSION**

101. At all times material hereto, MPD policy and custom regarding the transmission of incoming teletype fugitive warrant messages from the Teletype Unit to the Fugitive Unit, and MPD policy and custom regarding the distribution of, and responsibility for, fugitive warrant teletype messages within the Fugitive Unit, all but ensured that critical messages, such as that received from the Will County Sheriff's Office concerning Plaintiff Vasquez, would be delayed, misplaced and/or mishandled.

102. At all times material hereto, it was known to MPD that mishandling of teletype messages between the Teletype Unit and the Fugitive Unit were common, if not frequent. MPD, however, did nothing to correct or improve its policies and customs.

103. The District of Columbia's policies and customers reflect willful indifference to the constitutional rights of Plaintiff and others under the Fifth Amendments to the U.S. Constitution.

104. As a direct and proximate result of MPD's policies and customs, Plaintiff Vasquez's constitutional rights have been violated, causing him to suffer pain, mental anguish, embarrassment and humiliation, loss of enjoyment of life, and lost wages and/or diminished earnings capacity, among other things.

105. Plaintiff Vasquez also requests an award of punitive damages based on Defendants' misconduct or actual malice, or such recklessness or negligence so as to evidence a conscious disregard of Plaintiff's rights.

## COUNT VI

42 U.S.C. § 1983 –*Monell* Claim under the Fifth Amendment
Custom/Policy Regarding Fugitive Warrant Confirmation
(Against District of Columbia)

106. The allegations contained in paragraphs 1–105 are hereby incorporated into Count VI as if fully set forth herein.

**REDACTED VERSION**

107. MPD's policies and customs directed officers to ignore critical information in the NCIC database, such as the entry instructing, "DO NOT DETAIN A VASQUEZ, JOSE [ ] SS [578-11- ] THIS IS NOT SUSPECT."

108. MPD's policies and customs directed officers to ignore critical information in MPD's own files and in the arrest records concerning the prior disposition of fugitive warrant cases.

109. MPD's policies and customs directed officers to provide only name and date of birth – and to ignore Social Security Numbers – in submitting "hit-and-locate" requests. These policies and customs made it likely that individuals with a common name, such as Jose Vasquez, would share birth dates with similarly-named persons sought on fugitive warrants and would be erroneously "confirmed" as being the subject of a fugitive warrant. (Plaintiff Vasquez had a 1 in 365 chance of sharing a birth date with the Jose Vasquez wanted for murder in Illinois.)

110. The District of Columbia's policies and customers reflect willful indifference to the constitutional rights of Plaintiff and others under the Fifth Amendments to the U.S. Constitution.

111. As a direct and proximate result of MPD's policies and customs, Plaintiff Vasquez's constitutional rights have been violated, causing him to suffer pain, mental anguish, embarrassment and humiliation, loss of enjoyment of life, and lost wages and/or diminished earnings capacity, among other things.

112. Plaintiff Vasquez also requests an award of punitive damages based on Defendants' misconduct or actual malice, or such recklessness or negligence so as to evidence a conscious disregard of Plaintiff's rights.

**REDACTED VERSION**

## COUNT VII

42 U.S.C. § 1983 –*Monell* Claim under the Fifth Amendment
Failure to Train
(Against District of Columbia)

113. The allegations contained in paragraphs 1–112 are hereby incorporated into Count VI as if fully set forth herein.

114. The District of Columbia failed adequately to supervise and train MPD officers with respect to the proper handling of and attention to incoming teletype messages exonerating persons being held on fugitive warrants; failed adequate to supervise and train MPD officers to conduct thorough reviews of NCIC reports, particularly where, as here, entries are plainly related and include clear directives, such as "DO NOT DETAIN A VASQUEZ, JOSE [ ] SS [578-11- ] THIS IS NOT SUSPECT;" failed adequately to supervise and train MPD offices to use all available personal identifiers, including Social Security Numbers, when making "hit-and-locate" requests; failed adequately to supervise and train MPD offices to enter sufficient information in electronic databases to prevent recurring arrests of persons such as Plaintiff Vasquez; and failed adequately to supervise and train MPD offices to review prior case history, photographs, fingerprints, and other identifying information in the course of "confirming" that a person in custody is subject to a fugitive warrant.

115. The District of Columbia failed adequately to supervise and train MPD officers despite widespread knowledge of repeated problems handling incoming fugitive warrant teletype messages, despite previous incidents of suspect mis-identification, and despite knowing of Plaintiff Vasquez's repeated incarceration on a warrant for which he was not the person sought.

116. The District of Columbia's failure to supervise and train reflects willful indifference to the constitutional rights of Plaintiff and others under the Fifth Amendments to the U.S. Constitution.

**REDACTED VERSION**

117. As a direct and proximate result of the District of Columbia's failure to supervise and train, Plaintiff Vasquez's constitutional rights have been violated, causing him to suffer pain, mental anguish, embarrassment and humiliation, loss of enjoyment of life, and lost wages and/or diminished earnings capacity, among other things.

118. Plaintiff Vasquez also requests an award of punitive damages based on Defendants' misconduct or actual malice, or such recklessness or negligence so as to evidence a conscious disregard of Plaintiff's rights.

WHEREFORE, Plaintiff Jose T. Vasquez, by counsel, respectfully requests that this Honorable Court enter judgment in his favor, and against defendants District of Columbia and Officer Ruben Agosto, jointly and severally, in the following manner:

(a) Compensatory damages in an amount of not less than $750,000 against Defendants for the above-listed claims;

(b) Punitive damages in an amount of not less than $1,000,000 against Defendants for their misconduct and actual malice;

(c) Plaintiff's attorney's fees and costs incurred during and in connection with this matter pursuant to 42 U.S.C. § 1988 and/or all other applicable District or federal law;

(d) Pre- and post-judgment interest; and

(e) Any and all other relief that this Court deems just and proper.

**REDACTED VERSION**

Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid (#476961)
Kimberly B. Frumkin (#1019214)
DORSEY & WHITNEY LLP
1401 New York Avenue, NW, Suite 900
Washington, DC 20005
Phone: (202) 442-3555
Fax: (202) 442-3199
Email: magid.chip@dorsey.com
frumkin.kim@dorsey.com

Date: September 25, 2020

*Counsel for Plaintiff Jose T. Vasquez*

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims made herein for which a jury is permissible.

/s/ Creighton R. Magid
Creighton R. Magid