## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSE T. VASQUEZ,

*Plaintiff*,

v.

COUNTY OF WILL, ILLINOIS, *et al.*,

*Defendants*.

Civil Action No. 1:17-cv-02194-APM

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA AND RUBEN AGOSTO'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jose Vasquez was stopped by a Metropolitan Police Department (MPD) officer on October 23, 2016, for a routine traffic violation. The officer's investigation revealed that Plaintiff was wanted under an arrest warrant for murder issued by authorities of Will County, Illinois. Plaintiff was thereby arrested and arraigned in Superior Court of the District of Columbia upon charges of being a fugitive from justice and was incarcerated pending an extradition hearing. On October 28, 2016, MPD Officer Ruben Agosto's (Officer Agosto) identification information email, Will County sent a teletype to MPD's Teletype Unit stating that information the county had provided to a national criminal database was incorrect and therefore the District had the wrong individual.

MPD had processes in place that, if undertaken correctly, would have resulted in a member of MPD's Fugitive Squad obtaining the teletype the day the Teletype Unit received it. The Fugitive Squad unit would have processed the information including notifying the prosecuting attorney who would have arranged for Plaintiff's immediate release. Unfortunately, something went awry and the procedures in place for processing the teletypes were not followed

on the day in question.  The teletype was not sent to the criminal prosecutor until November 3, 2016, which is the date Plaintiff was released from custody.

Then, on March 3, 2017, a routine traffic stop by the Secret Service resulted in Plaintiff's arrest as a fugitive from justice.  Will County had failed to update the national criminal database to avoid a rearrest of Plaintiff.  After the arrest, the Secret Service transferred Plaintiff to MPD's custody and Plaintiff was detained overnight.  Upon Plaintiff's appearance in Superior Court on March 4, 2017, it was established that Plaintiff was the wrong Jose Vasquez, and he was immediately released from custody.

Plaintiff now improperly brings constitutional claims under 42 U.S.C. § 1983 against the District of Columbia and Officer Agosto seeking to "federalize" what should be no more than common law claims of negligence related to his detention at the D.C. Jail from October 28, 2016, until November 3, 2016.  Based on the record in this case, he cannot demonstrate "deliberate indifference" by Officer Agosto or the District that would render either defendant liable for a violation of Plaintiff's constitutional rights.  The District also cannot be held liable for a Fifth Amendment violation related to Plaintiff's overnight detention at the D.C. Jail on March 3, 2017.  Finally, as demonstrated below, Plaintiff's common law claims related to the March 3, 2017 detention also fail.

## FACTUAL BACKGROUND

On October 23, 2016, at approximately 10:30 p.m., Plaintiff Jose Vasquez was operating a vehicle in the 5400 block of Georgia Avenue, NW, in the District of Columbia, and was stopped by Officer Terrence Sutton with the Metropolitan Police Department (MPD) for not having his headlights on.  Defendants' Statement of Undisputed Material Fact (SMF) ¶ 1. During the traffic stop, Plaintiff provided Officer Sutton with his driver's license and registration

after which Officer Sutton checked Plaintiff's license status and criminal history in the NCIC database. *Id.* at ¶ 2. Plaintiff's criminal status check showed an outstanding homicide warrant from Will County, Illinois. *Id.* at ¶ 3. The NCIC entry identified the subject of the warrant as Jose Vasquez with Plaintiff's date of birth and Plaintiff's social security number. *Id.* at ¶ 4. Officer Sutton had Plaintiff confirm his social security number, which matched the social security number provided for the subject of the Will County, Illinois warrant. *Id.* at ¶ 5. Officer Sutton confirmed the warrant through the dispatcher using Plaintiff's name and date of birth and contacted MPD's teletype unit to notify Illinois. *Id.* at ¶ 6. Plaintiff was arrested for being a Fugitive from Justice and transported to the Fourth District for processing. *Id.* at ¶ 7.

On October 24, 2016, Officer Ernest Cole with MPD's Fugitive Unit verified through NCIC that the warrant Plaintiff had been arrested on was active and that Plaintiff would be extradited on the warrant. *Id.* at ¶ 8. Officer Cole sent a "hit and locate" to Will County, Illinois – a teletype message notifying Will County that MPD was holding the subject of the warrant and seeking confirmation that they will extradite him. *Id.* at ¶ 9. Officer Cole prepared an Affidavit in Support of an Arrest Warrant and presented it to the United States Attorney's Office for the District of Columbia to open a case. *Id.* at ¶ 10.

On October 24, 2016, a Fugitive from Justice charge was filed against Plaintiff, who was then arraigned on that charge and ordered held without bond with an extradition hearing scheduled for November 23, 2016. *Id.* at ¶ 11. On October 28, 2016, Officer Ruben Agosto with MPD's Fugitive Unit emailed Sergeant Paul Rojek with the Will County Sheriff's Office a photograph of Plaintiff along with his biographical information and his fingerprints. *Id.* at ¶ 12. Officer Agosto was not assigned to this case; he merely responded to the request from Will County authorities when they were seeking information about Plaintiff. *Id.* at ¶ 13. After

providing the requested information to Will County, Officer Agosto had no reason to believe that anything further would be required of him on this matter. *Id.* at ¶ 14.

Sergeant Rojek sent Plaintiff's fingerprints to a detective with the Joliet (Illinois) Police Department to have them compared to the fingerprints of the subject of the Will County warrant, and the fingerprint comparison revealed that Plaintiff was not the subject of the warrant. *Id.* at ¶ 15. On October 28, 2016, after receiving confirmation that Plaintiff was not the subject of the Will County warrant, a teletype message was sent to MPD, to the attention of the Warrant/Fugitive Squad, informing them that Plaintiff was not the subject of the Will County warrant and instructing MPD to release any holds they had on him for Will County. *Id.* at ¶ 16.

In October 2016, it was MPD Teletype Unit's practice that, when a teletype message references a particular person, they would print out the message, place it in the Fugitive Unit's outbox for pick-up, and call the unit to let them know they have a message regarding that particular person. *Id.* at ¶ 17. MPD's Fugitive Unit's practice was to collect the messages from the Teletype Unit every day in the morning and the afternoon, with the exception of Sunday. *Id.* at ¶ 18. Messages indicating the person being held is in fact not the subject of a warrant are unusual; however, any such message, or any message indicating a change in the extradition authorization, would be immediately provided to the United States Attorney's Office by the member of the Fugitive Unit who retrieved the message from the Teletype Unit. *Id.* at ¶ 19.

On November 2, 2016, Plaintiff had a bond review hearing, and the Court ordered that he remain held without bond, but also ordered the United States Attorney's Office to investigate Plaintiff's claim that this was a case of mistaken identity. *Id.* at ¶ 20. On November 3, 2016, Officer Agosto sent the October 28, 2016 teletype message from Will County to the United States Attorney's Office. *Id.* at ¶ 21.

4

On November 3, 2016, the United States Attorney's Office moved to dismiss Plaintiff's Fugitive from Justice case on the basis that he was not the subject of the Will County warrant. *Id.* at ¶ 22. The Motion to Dismiss was granted, and Plaintiff was released from custody on November 3, 2016. *Id.* at ¶ 23.

On March 3, 2017, at approximately 9:10 a.m., Plaintiff was operating a vehicle on 15th Street, NW, in the District of Columbia, and was stopped by Officer Joseph Sanford with the United States Secret Service (USSS) for having a non-working brake light. *Id.* at ¶ 24. During the traffic stop, Plaintiff provided Officer Sanford with his driver's license, and Officer Sanford requested a check of Plaintiff's permit status and name from the Joint Operations Center. *Id.* at ¶ 25. The check of Plaintiff's name revealed an open warrant from Will County, Illinois, which was confirmed by the Joint Operations Center. *Id.* at ¶ 26. Plaintiff was arrested for being a Fugitive from Justice and ultimately transported to MPD's Second District for processing. *Id.* at ¶ 27.

On March 4, 2017, Officer Leroy Rollins with MPD's Fugitive Unit verified through NCIC that the warrant Plaintiff had been arrested on was active and that Plaintiff would be extradited on the warrant. *Id.* at ¶ 28. Officer Rollins also sent a "hit confirmation" to Will County, Illinois. *Id.* at ¶ 29. Officer Rollins then prepared an Affidavit in Support of an Arrest Warrant to present to the United States Attorney's Office. *Id.* at ¶ 30.

A case was initiated on March 4, 2017, charging Plaintiff with being a Fugitive from Justice; however, the matter was dismissed at Plaintiff's arraignment later that day. *Id.* at ¶ 31.

Based upon the above-described events, Plaintiff brings suit against Officer Agosto under 42 U.S.C § 1983, alleging a violation of his Fourth Amendment rights (Count IV) and brings claims against the District alleging violations of his Fifth Amendment rights (Counts V, VI, VII),

as well as common law claims of false arrest/imprisonment (Count I), malicious prosecution (Count II) and negligence (Count III).

## LEGAL STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56 where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Brehm v. Dep't of Defense*, 577 F. Supp. 2d 446, 448 (D.D.C. 2008). "[C]ourt[s] must look to the substantive law on which each claim rests" in determining which facts are material. *Brehm*, 577 F. Supp. 2d at 448 (citation omitted). "A genuine issue is one whose resolution could establish an element of a claim or defense, and, therefore, affect the outcome of the action." *Id.* (internal quotation marks and citation omitted).

To survive summary judgment, the nonmoving party must present evidence to support each essential element of his or her claims. *Celotex v. Cattret*, 477 U.S. 317, 322-23 (1986). It "may not rely solely on allegations or conclusory statements" and must instead "present specific facts that would enable a reasonable jury to find in its favor." *Brehm*, 577 F. Supp. 2d at 448 (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

## ARGUMENT

I.   **Officer Agosto is Entitled to Summary Judgment.**

A.   **Plaintiff Cannot Prove That Officer Agosto Violated Plaintiff's Fourth Amendment Rights.**

Plaintiff was arrested by an MPD officer on October 23, 2016 based on the fugitive warrant from Will County, and he was arraigned and held without bond on October 24, 2016.

6

SMF ¶¶ 7, 11.  In response to a request for information by Will County on October 28, 2016,

Officer Agosto emailed Sergeant Paul Rojek with the Will County Sheriff's Office a photograph

of Plaintiff along with his biographical information and his fingerprints.  *Id.* ¶¶ 12, 14.  Plaintiff

alleges that Officer Agosto violated his Fourth Amendment rights because he failed to "follow

up" on the request from Will County and, as a result, Plaintiff "spent an additional six days in

jail."  3d Am. Compl. [79] ¶ 98.  This "failure to act" allegation does not support a Fourth

Amendment claim.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.

Am. IV.  A "seizure" triggering the Fourth Amendment's protections occurs when a person's

freedom of movement is terminated or restrained, either by physical force or a show of authority.

*Brendlin v. California,* 551 U.S. 249, 254 (2007).  Here, however, Plaintiff was already in

custody when he alleges that Officer Agosto's inaction caused him to spend additional time in

jail.  Because Plaintiff had already been seized and his freedom terminated before Officer Agosto

became involved in his case, Plaintiff's Fourth Amendment rights could not have been violated

by Officer Agosto.  *See Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 273-74 (D.D.C.

2011); *Harris v. Bowser*, 369 F. Supp. 3d 93, 101-02 (D.D.C. 2019) (once patient is in custody

of St. Elizabeths Hospital, there can be no subsequent seizures for purpose of the Fourth

Amendment).  Thus, Plaintiff's Fourth Amendment claim against Officer Agosto Fails.

## B.    Officer Agosto Did Not Violate the Fifth Amendment.

If the Court elects to construe Plaintiff's improperly pled Fourth Amendment claim as a

Fifth Amendment "failure to act" claim, Officer Agosto is nevertheless entitled to summary

judgment.  Only the most egregious and arbitrary acts of government officials are sufficient to

trigger the substantive due process clause.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  The conduct must be "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8; *see also Collins*, 503 U.S. at 128; *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001).  The action most likely to rise to the "conscious shocking level," is conduct intended to injure the plaintiff in a way unjustifiable by any government interest. *FOP v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (quoting *Lewis*, 523 U.S. at 849 (citing *Daniel v. Williams*, 474 U.S. 327, 331 (1986)).  This stringent requirement exists to differentiate substantive due process from local tort law.  *Butera*, 235 F.3d at 651.

Here, Plaintiff does allege—nor is there any evidence in the record demonstrating—that Officer Agosto intended to cause Plaintiff to be false or over-detained.  Instead, Plaintiff proceeds on a "failure to act" theory.  A plaintiff alleging a Fifth Amendment "failure to act" violation must prove that the official was at least deliberately indifferent to his constitutional rights.  *See Collins,* 503 U.S. at 117; *City of Canton v. Harris,* 489 U.S. 378, 390 (1989) (city must exhibit deliberate indifference toward individual in its custody before he can bring § 1983 claim based on its failure to train officers).  Deliberate indifference is "a mental state more blameworthy than negligence," and is "a state of mind that is the equivalent of criminal recklessness."  *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003).  Conduct rising to the level of deliberate indifference must also shock the conscience.  *Estate of Phillips v. District of Columbia,* 455 F.3d 397, 404 (D.C. Cir. 2006).

Deliberate indifference requires an omission of "indifference to a serious risk that is voluntary, not accidental."  *Farmer v. Brennan,* 511 U.S. 825, 840 (1994).  Thus, there can be no liability "unless the official knows of and disregards an excessive risk…; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837.  There is no liability for "an official's

failure to alleviate a significant risk that he should have perceived but did not."  *Id.* at 838.

Given the standard for establishing deliberate indifference, the Supreme Court has

categorically rejected the notion that common law torts or negligently inflicted harm may

provide the basis for a substantive due process claim.  *Lewis*, 523 U.S. at 848-49.  Thus,

inadvertent errors or even negligence in the performance of official duties, do not warrant redress

under the substantive due process clause.  *Cnty. of Sacramento,* 523 U.S. at 849, ("the

Constitution does not guarantee due care on the part of state officials; liability for negligently

inflicted harm is categorically beneath the threshold of constitutional due process."); *see also*

*Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).

Here, there is no evidence Officer Agosto was deliberately indifferent to any risk that

Plaintiff's period of incarceration after his arrest would be unnecessarily prolonged.  Officer

Agosto had no reason to believe that further action on his part was necessary.  If Plaintiff was not

the person wanted in Will County, officials they would either phone back or email the Fugitive

Squad with that information or they would send a teletype that would be processed once a

member of the Fugitive squad made one of the daily pick-ups from the Teletype Unit.  SUMF ¶

17.

Perhaps Officer Agosto could have done more to assure that Plaintiff's incarceration was

not unduly delayed.  But as Plaintiff concedes, Officer Agosto's alleged failure to act amounts to

nothing greater than "inattention" on his part.  3d Am. Compl. [79] ¶ 50.  Inattention is conduct

that is traditionally associated with negligence and simply does not rise to the level of conscience

shocking behavior to constitute deliberate indifference.  *See e.g.*, *Smith v. District of Columbia,*

306 F. Supp. 3d 223, 258-59 (D.D.C. 2018) (jail official's failure to process prisoner release order correctly was no more than a mistake that led to an overdetention and could not be deemed conduct in violation of the Fifth Amendment).  Accordingly, in the event that the Court construes Plaintiff's Fourth Amendment claims as one arising under the Fifth Amendment, Plaintiff's claim still fails

### C.      Officer Agosto is Entitled to Qualified Immunity.

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  All but the "plainly incompetent or those who knowingly violate the law" are entitled to qualified immunity.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "An official sued under 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quotations and citation omitted).  This requires a two-pronged analysis.  "To defeat a defense of qualified immunity, a plaintiff must show not only [1] that an official 'violated a constitutional right,' but [2] also that 'the right was clearly established' at the time of the violation."  *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)).  The trial court has the discretion to decide which of the two prongs to tackle first.  *Id*. (citation omitted).

A right is clearly established if it is "sufficiently clear that every reasonable officer would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotations and citation omitted).  Thus, as the Supreme Court has articulated:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent.  The rule must be

> "settled law," which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby,* 138 S.Ct. 577, 589-90 (2018) (internal citations omitted).

Here, Plaintiff cannot satisfy either prong of qualified immunity.  First, as demonstrated above, Officer Agosto did not violate the Fourth or Fifth Amendments.  Second, even if the Court found that Officer Agosto violated the Fourth or Fifth Amendment, there does not appear to be *any* controlling precedent that would place Officer Agosto on notice—given the circumstances of this case—that the Fourth or Fifth Amendment compelled him to "follow through" and contact Will County directly to determine whether Plaintiff was the person wanted by the warrant.  Consequently, Officer Agosto is entitled to qualified immunity.

## II.    The Court Should Grant Judgment to the District on Plaintiff's Constitutional Claims in Counts V, VI, and VII.

A municipality's liability under 42 U.S.C. § 1983 is limited; it cannot be held liable under that statute on the theory of *respondeat superior*.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691, 694 (1978); *Triplett v. District of Columbia*, 108 F. 3d 1450, 1453 (D.C. Cir. 1997); *Hunter v. District of Columbia*, 943 F. 2d 69, 74 (D.C. Cir. 1991); *Graham v. Davis*, 880 F. 2d 1414, 1421 (D.C. Cir. 1989).  "[A] local government may not be substituted under § 1983 for an injury inflicted by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."  *Monell,* 426 U.S. at 694.  A prima facie case for a *Monell* claim requires both (1) a "predicate constitutional violation" and (2) "that a custom or policy of the municipality caused the violation."  *See Baker v. Dist. of Columbia,* 326 F.3d 1302, 1305 (D.C.

Cir. 2003), citing *Collins v. City of Harked Heights, Tex.* 503 U.S. 115, 120 (1992); *accord Brown v. Dist. of Columbia,* 514 F.3d 1279, 1283 (D.C. Cir. 2008); *Kona v. Dist. of Columbia,* 971 F. Supp. 2d 74, 81 (D.D.C. 2013).

In this case, as demonstrated above, there is no predicate Fifth Amendment violation and, as a result, the District is also entitled to summary judgment for Plaintiff's Fifth Amendment claims. Assuming—for the sake of argument only—that the Court finds a predicate constitutional violation, the District is nonetheless entitled to judgment as a matter of law. Municipal liability under Section 1983 attaches only where a deliberate choice to follow a course of action is made from among various alternatives by city policymakers. *City of Canton*, 489 U.S. at 389. This requirement ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403-04 (1997). Accordingly a plaintiff can prove that a municipal custom or policy caused the constitutional harm by demonstrating: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,' " or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (internal citations omitted); *see generally Connick v. Thompson*, 563 U.S. 51 (2011) (court outlines the requirements for holding a municipality liable under §1983).

Plaintiff does not allege that District policymakers explicitly adopted an unconstitutional policy, nor does he allege that actions of a policymaker caused him harm knowingly ignored or committed an unconstitutional act that resulted harm to the Plaintiff.  *See generally* 3d. Am. Compl. [79].  Rather, he alleges that the District demonstrated a willful indifference to his Fifth Amendment rights as to MPD policy and custom regarding:  (1) teletype messages sent to MPD by other jurisdictions (Count V); (2) the manner that officers confirmed fugitive warrants (Count VI); (3) the training of officers as to the proper handling and attention to incoming teletypes and as to reviewing fugitive warrant information. (Count VII).  *Id.* at pp. 21-26.

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 563 U.S. at 61-62. Only if a municipal policy was "so likely to result in the violation of constitutional rights," and the need to change the policy "so obvious," could "policymakers of the city . . . have been deliberately indifferent to the need." *Harvey v. District of Columbia*, 798 F.3d 1042, 1054 (D.C. Cir. 2015), quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989); *see also Smith v. Corrections Corp. of America,* 674 F. Supp. 2d 201, 206 (D.D.C. 2017).

Plaintiff has the burden of establishing the District's deliberate indifference by proving that it knew or should have known that its practices regarding the processing of teletype messages from other jurisdictions, the manner that MPD officers confirmed fugitive warrants, and the training of MPD officers were likely to result in Fifth Amendment violations, yet it failed to undertake any measures to address the problem.  *See Baker,* 326 F.3d at 1306-07; *Harvey,* 798 F.3d at 1054; *see also Turner v. Corrections Corporation of America,* 56 F. Supp. 3d 32, 35-36 (D.D.C. 2014).  Thus, when a plaintiff seeks to establish municipal liability in a complaint in the absence of an explicit policy, "she must allege 'concentrated, fully packed, precisely delineated

scenarios' as proof that an unconstitutional policy or custom exists." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (Brown Jackson, J.) (quoting *Parker v. District of Columbia,* 850 F.2d 708, 712 (D.C. Cir. 1988)); *see also Ryan v. District of Columbia,* 306 F. Supp. 3d 334, 345-46 (D.D.C. 2018) (Brown Jackson, J.).

The only record evidence of the District's knowledge that its practices were likely to result in Fifth Amendment violations is the testimony of Shavaka Melvin who was the extradition clerk for the United States Attorney's Office, which processed approximately 2,000 fugitive cases per year, for nearly 14 years.  Melvin Dep. at 12:20-13:2, attached as Exhibit 20. According to Ms. Melvin she "heard" approximately ten times a month that there were "issues" with the Teletype Unit being slow to relay information to the Fugitive Unit.  Melvin Dep. at 26:8-27:21, attached as Exhibit 20.  Ms. Melvin "guessed" that she handled approximately five to ten mistaken identity fugitive cases per year.  Melvin Dep. at 15:17-16:3, attached as Exhibit 20.  Ms. Melvin encountered situations in which a person was arrested multiple times on the same warrant no more than five times during her nearly 14 years as the extradition clerk.  Melvin Dep. at 41:1-22, attached as Exhibit 20.  Ms. Melvin's testimony, however, is inadequate to establish a Fifth Amendment claim against the District.

First, there is no indication that Ms. Melvin, who was employed by the USAO, or anyone else ever communicated to supervisors within MPD that there existed problems within the Teletype Unit that needed to be addressed.  Furtherher testimony that she "heard" about "issues" with the Teletype Unit is classic hearsay and would be inadmissible at trial.  *See* Fed. R. Evid. 802 (hearsay not admissible).  Moreover, even if this evidence was admissible, it is vague and provides no information about the cause and impact of the delays, thereby not providing the necessary causal link between the "issues" and Plaintiff's detention.  *See Brown*, 520 U.S. at 404

14

("plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Further, the fact that she handled five to ten mistaken identity cases a year in no way establishes that the Fugitive Squad or the Teletype Unit was responsible for the wrong person being arrested. Similarly, that Ms. Melvin is aware that, over the span of 14 years, no more than five persons were arrested multiple times on the same warrant does not advance Plaintiff's *Monell* claim, becausethere is no demonstration that the multiple arrests resulted from deficiencies in the Fugitive Squad, Teletype Unit, or training deficiencies of MPD officers. Thus, Plaintiff has not established the necessary causal connection between the multiple,arrests upon the same warrant  and Plaintiffs ijuries. *See Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (District of Columbia cannot be liable for constitutional violations where plaintiff fails to demonstrate that a municipal policy was the "moving force" behind the constitutional violation).

Further, as to the "five persons during 14 years" statistic, Plaintiff provides no "measuring stick" by which the jury could determine whether this figure could be construed as an indicia of deliberate indifference. Plaintiff did not engage an expert, who could put this figure in perspective for the Court or a jury. *Cf.*, *Huthnance v. District of Columbia*, 793 F. Supp. 2d 183, 192 (D.D.C. 2011), *aff'd* 722 F.3d 371 (D.C. Cir. 2013) (deliberate indifference proven where plaintiff's expert presented statistical evidence demonstrating excessive numbers of false arrests); *Barnes v. District of Columbia,* 793 F. Supp. 2d 260, 281 (D.D.C. 2011) (deliberate indifference not established where over detentions were statistically lower than those found acceptable in other courts evaluating over detention problems).

In short, Plaintiff has failed to develop sufficient evidence in support of his theory that the District maintained a custom or policy of deliberate indifference to practices within MPD that would likely result in a violation of his Fifth Amendment rights.  As a result, the District is entitled to summary judgment as to Plaintiff's Section 1983 claims.  *See e.g.*, *Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 225-26 (D.D.C. 2018) (Section 1983 claim dismissed where plaintiff failed to allege facts establishing a widespread custom or practice); *Jackson v. District of Columbia*, 2016 WL 1254217, *4-5 (D.D.C. 2016); *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155-59 (D.D.C. 2015); *Philogene v. District of Columbia*, 864 F. Supp. 2d 127, 131 (D.D.C. 2012).

Finally, as to Plaintiff's Fifth Amendment failure to train claim, the Supreme Court has made it clear that a municipality will only be held liable in "limited circumstances," because "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Thus Plaintiff bears the burden of proving that the lack of training actually caused the violation in question. *See Harris*, 489 U.S. at 391 ("[F]or liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury.").

Here, Plaintiff took no discovery regarding MPD's training policies, practices or programs.  He did not seek discovery as to training manuals or any other materials related to training.  Lacking any such evidence, Plaintiff is incapable of demonstrating a causal connection between a lack of training on the part of the District and his injuries. *Id*. at 390 (the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform).

### III.      The District is Entitled to Judgment on Plaintiff's Common Law Claims.

#### A.      Supplemental Jurisdiction

16

If the Court grants summary judgment for Defendants on Plaintiff's federal claims, it must decide whether to retain supplemental jurisdiction over the common law claims. *See* 28 U.S.C. § 1367. In deciding whether to exercise supplemental jurisdiction, the "court must first determine whether the state and federal claims derive from a common nucleus of operative fact." *Konah v. District of Columbia,* 815 F. Supp. 2d 61, 78 (D.D.C. 2011) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia,* 93 F.3d 910, 920 (D.C. Cir. 1996)). If so, "the court then must decide whether to exercise its discretion to assert jurisdiction over the state claim." *Id.* at 78-79. In making this determination, the court must weigh factors of judicial economy, convenience, fairness, and comity. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1265-66 (D.C. Cir. 1995). But if a common law claim raises a "novel or complex issue of state law," the court may decline to exercise its supplemental jurisdiction. *Konah,* 815 F. Supp. 2d at 79.

Here, Plaintiffs' federal and state claims derive from a common nucleus of operative facts—namely Plaintiff's arrest and incarceration based on the Will County warrant. Judicial economy, fairness, and convenience also weigh in favor of this Court retaining jurisdiction. This case has been pending since 2017. The issues related to the common law claims have been fully briefed by the parties and are ripe for adjudication. It would waste time and resources to remand the common law claims for adjudication in a different forum. Finally, this matter presents no novel or complex issues of state law. As a result, the Court should exercise supplemental jurisdiction over Plaintiffs' common law claims and resolve the case in its entirety.

**B.** **The District is Entitled to Judgment on Plaintiff's False Arrest/Imprisonment Claim.**

To support his false arrest/imprisonment claim in Count I, Plaintiff claims he was "arrested and detained in March 2017[1] based on an erroneous entry in the NCIC database, in turn based on a constitutionally infirm warrant." 3d. Am. Compl. [79] ¶ 75.  Plaintiff further alleges that his arrest and detention was without probable cause and the detention was unlawful." *Id*.  He also asserts that it was Correction Officers employed by the District of Columbia who falsely imprisoned him. *Id*.at ¶ 76.[2]  This claim lacks merit.

"The elements of a constitutional claim for false arrest are substantially identical to the elements of a common-law false arrest claim," *Scott*, 101 F.3d at 753-54, and thus, "[c]onstitutional and common law claims of false arrest are generally analyzed as though they comprise a single cause of action." *Amobi v. District of Columbia Dep't of Corr.*, 755 F.3d 980, 989 (D.C. Cir. 2014).  Here, Plaintiff was arrested in March of 2017, by an officer employed by the United States Secret Service, not the Metropolitan Police Department.  SMF ¶ 24.  Plaintiff avers that following his arrest he was taken to the hospital for treatment.  Am. Compl. ¶ 63. There is no indication that there was ever a break in his detention while he was at the hospital. From the hospital he was taken to MPD's Second District for processing. SUMF ¶ 27  His detention continued overnight until he was brought to Court the next day. .  Just as Office Agosto could not have committed an unconstitutional Fourth Amendment false imprisonment,  Plaintiff was already falsely imprisoned when his custody was transferred to MPD MPD officers as a result did not falsely imprison the Plaintiff.    imprisoned Plaintiff who was arrested by the United States Secret Service, a federal agency. *See* Section I.A. *supra*.  The District is accordingly entitled to summary judgment on Plaintiff's false arrest/imprisonment claim.

---

[1]      Notably, Plaintiff's claim is only for the March 2017 arrest. *See* 3d Am. Compl. [79] at pp. 18-19.

[2]      It is unclear why Plaintiff alleges that he was falsely imprisoned by correctional officers, as arrestees are not incarcerated at D.C. Jail until after arraignment in Superior Court.

Furthermore, a claim for false imprisonment "historically has been viewed as an intentional tort." *Johnson v. United States,* 547 F.2d 688, 692 (D.C. Cir. 1976)("[N]otwithstanding liability for negligence causing a confinement when actual damage ensues, only an act intended to impose confinement or known by the actor to be substantially certain of doing so generates the common law tort of false imprisonment.").  The record here is devoid of any allegations that correctional officers intended to impose unlawful confinement upon the Plaintiff.  Thus, the District is entitled to summary judgment as to this claim.

**C.    Plaintiff's Malicious Prosecution Claim for the March 2017 Arrest Fails.**

Plaintiff's malicious prosecution claim is based on the notion that MPD officers "maliciously instituted a suit against Plaintiff unsupported by probable cause, and the ensuing criminal proceedings terminated in Plaintiff's favor."  3d. Am. Compl. [79] ¶ 80.  More specifically, Plaintiff claims the following:

> A reasonable person in the MPD officers' position would have known that the facts and circumstances were insufficient to justify a reasonable belief that Plaintiff Vasquez was the person sought in the 2005 Warrant. A cursory check would have made it clear to the MPD officers that Plaintiff Vasquez had previously been charged as a fugitive from justice based on the same warrant and that the matter had been dismissed after Will County and/or Joliet confirmed that Plaintiff Vasquez was not the suspect named in the warrant.

*Id.* at ¶ 80.  The District posits that Plaintiff's claim should be construed as one for negligence rather than a malicious prosecution claim.

To support a malicious prosecution claim, "[t]here must be (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice."

19

*DeWitt v. District of Columbia,* 43 A.3d 291, 296 (D.C. 2012).  Malicious prosecution is an intentional tort.  *Flax v. Schertler*, 935 A.2d 1091, 1095-96 (D.C 2007).

Here, however, Plaintiff does not allege intentional conduct by any MPD officer—or any District employee—amounting to malice.  Rather, Plaintiff alleges a breach of the standard of care by the officer's failure to undertake a cursory records check which allegedly would have revealed that Plaintiff was the "wrong man."  Such a claim is quintessentially one for negligence, because plaintiff alleges that the officer violated a standard of care by not reviewing the records more carefully and that breach resulted in damage to Plaintiff.  *See District of Columbia v. Carmichael,* 577 A.2d 312, 314 (D.C. 1990).  Moreover, the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.  *Arbitraje Casa de Cambio, S.A. de C.V v. United States Postal Service,* 297 F. Supp. 2d 165, 169 (D.D.C. 2003) (although plaintiff alleged breach of contract, Court construed his claim as one for negligence requiring compliance with Federal Torts Claim Act).  Here Plaintiff's malicious prosecution claim should be construed as a negligence claim and dismissed.[3]

Further, the District is not responsible for Plaintiff's March 2017 arrest.  It is undisputed that Plaintiff was arrested by a member of the United States Secret Service—not a District of Columbia employee.  SMF ¶¶ 24, 27.  And he was released the same day a case was originally initiated against him.  *Id.* ¶ 37.  Thus because Plaintiff cannot prove that a criminal proceeding was initiated or continued by *the District* against him for the March 2017 arrest, his claims fails.

D.   **Plaintiff's Negligence Claim Fails For Lack of Expert Testimony.**

---

[3]    If the Court is inclined to allow Plaintiff's malicious prosecution claim to proceed as a negligence claim, the Court should nevertheless grant judgment in favor of the District for Plaintiff's failure to provide *any* expert testimony.  *See* Section III.D. *infra*.

Plaintiff alleges that he spent an unnecessary night in jail in March 2017 because of the District's negligence (Count III).  3d. Am. Compl. [79].  Plaintiff alleges that after his "first arrest by the MPD in October 2016, the MPD failed to take reasonable actions to ensure that [he] would not be mistakenly detained by MPD officers on the erroneous warrant again."  Id. at ¶ 86. In other words, Plaintiff alleges that procedures of MPD were lacking which caused him to be arrested.  This claim fails for Plaintiff's lack of an expert required to establish a breach of the standard of care by the District.

In any negligence action, the plaintiff "must establish by competent evidence a standard of care; that the defendant violated that standard; and that such violation proximately caused injury to the plaintiff." *District of Columbia v. Carmichael,* 577 A.2d 312, 314 (D.C. 1990) (citation omitted).  A failure to offer evidence sufficient to determine the applicable standard amounts to a failure of proof of negligence.  *See District of Columbia v. White,* 442 A.2d 159, 165 (D.C. 1982) ("Absent testimony [about the applicable standard of care], the jury [i]s forced to engage in speculation, which, of course, is prohibited.").

Expert testimony is required as to the standard care, "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Briggs v. Wash. Metro. Transit Area Auth.,* 481 F.3d 839, 845 (D.C. Cir. 2007); *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000), quoting *Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C. 1995).  Expert testimony is not required "if the subject matter is within the realm of common knowledge and everyday experience."  *Briggs,* 481 F.3d at 845.

Here, the operations and procedures of MPD are at issue.  Plaintiff alleges that in response to his first arrest, MPD had a duty to initiate procedures to prevent his rearrest upon an

invalid arrest warrant, as opposed to, for example, relying on Will County to ameliorate the problem.  Under such circumstances involving police procedures, expert testimony was required to "refer to commonly used police procedures, identifying specific standards by which the jury could measure the defendant's actions." *Butera v. District of Columbia*, 235 F.3d 637, 659 (D.C. Cir. 2001).  *See Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006) (expert testimony is required "in negligence cases . . . which involve issues of safety, security and crime prevention).

Furthermore, in order to succeed upon his negligence claim, Plaintiff  was required to present evidence as to what the District should have done to avoid the harm.  *See District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433-34. (D.C.  2000).  In other words, Plaintiff must demonstrate what steps MPD should have undertaken to ameliorate the alleged problems within the Teletype Unit and the Fugitive Squad, so as to avoid harm to the Plaintiff.  Lacking an expert, Plaintiff cannot meet this requirement.  *Id*.

In short, Plaintiff, has not retained an expert and consequently, the District is entitled to summary judgment as to Plaintiff's negligence claim.

## CONCLUSION

For the foregoing reasons, the Court should grant judgment in favor of the District and Officer Agosto.

Date:  January 27, 2021                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Alicia M. Cullen*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Robert A. DeBerardinis, Jr.*
ROBERT A. DEBERARDINIS, JR. [335976]
Senior Assistant Attorney General
MICHELLE G. HERSH [980097]
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
Phone:  202-724-6642; 202-807-0360
Fax:  202-741-8895; 202-741-8982
Email:  robert.deberardinis@dc.gov;
michelle.hersh@dc.gov

*Counsel for Defendants District of Columbia
and Ruben Agosto*