

Deposition of:
# Shavaka Melvin

*June 17, 2020*

In the Matter of:

# Vasquez v. County of Will, Illinois, et. al.

Veritext Legal Solutions
800-734-5292 | calendar-dmv@veritext.com |

Page 1

```
 1        UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA
 2
     -------------------------------:
 3   JOSE T. VASQUEZ,               :
                                    :
 4           Plaintiff,             :
                                    :
 5       vs.                        : Case No.:
                                    : 1:17-cv-02194-APM
 6   DISTRICT OF COLUMBIA, et al.,  :
                                    :
 7           Defendants.            :
     -------------------------------:
 8
 9
10       REMOTE DEPOSITION OF SHAVAKA MELVIN
11
12   DATE:            Wednesday, June 17, 2020
13   TIME:            10:26 a.m.
14   LOCATION:        Alexandria, Virginia
15   REPORTED BY:     Shari R. Broussard, RPR, CSR
                      Reporter, Notary
16
17
18
19
20
21
22
```

1       Q    Okay.
2       A    -- I don't specifically remember this
3  case, but I know I wrote the motion.
4       Q    And what you were just describing was
5  the standard procedure in the United States
6  Attorney's Office for the District of Columbia
7  when it came to out-of-state fugitive warrant
8  cases in which the identity of the person who had
9  been picked up on the warrant was in question?
10      A    Absolutely, yes, sir.
11      Q    Okay.  I'm going to ask now to take a
12 look at Melvin Deposition Exhibit 1, and you'll
13 see maybe if this can help refresh your memory.
14           (Melvin Exhibit Number 1 was
15           marked for identification.)
16           THE WITNESS:  No, it does not.  It -- it
17 could very well be -- pardon?
18 BY MR. MAGID:
19      Q    Okay.  Go ahead.
20      A    It could very well be -- I'm not sure if
21 you're familiar with how many cases I process
22 every year, but I was the extradition clerk for --

1  for almost 14 years and we average 2,000 cases a
2  year, 2,000 fugitive cases.  So that could very
3  well be, you know -- and this happens -- this --
4  this -- the mistaken identity didn't happen very
5  often, but it happened often enough and -- and
6  I've -- I've written several motions requesting
7  dismissal because we had the wrong person several
8  times.  But I can't pinpoint -- I don't recall
9  specifically Mr. Vasquez's case, but I know that I
10 wrote the motion.  But this doesn't help me re- --
11 this doesn't refresh my memory at all.
12      Q    Okay.  I'm going to ask you to take a
13 look at the entry labeled 11/2/16.  And my
14 highlighting isn't all that great --
15      A    Okay.
16      Q    -- but you can see the paragraph that
17 I'm referring to.
18           Can you see that?
19      A    No.
20      Q    It says, "Event Resulted" and "Release
21 Status" in the second column and then, "Event
22 Resulted - Release Status:  NO BOND.  Case

1      A     I have it.

2      Q     Okay.  You've got it?

3      A     I do.

4      Q     Okay.  So did I read that correctly, that the "Case was continued for AUSA Little to look into a photograph of the person wanted in the demanding jurisdiction.  Defense Counsel made representations that it was mistaken identity.  An additional bond review hearing was scheduled.  A Spanish Interpreter was present.  AUSA Little appeared via telephone"?

12     A     Yes, sir.

13     Q     All right.  But you handled enough mistaken identity extradition cases, but this one does not stand out?

16     A     No, sir, it does not stand out.

17     Q     Approximately how many mistaken identity cases did you handle a year?

19     A     I don't have a -- I don't have an exact number, but if I had to guess, I would say -- I would say several.  It ranged from maybe five to -- to ten maybe, but I don't have an exact

1   over to teletype.  And whenever they would say
2   that, I would just assume that teletype is -- this
3   is -- this is a different office.  There was some
4   sort of, you know, process to get the paperwork or
5   the information from teletype.
6        Q    All right.  Well, you mentioned that you
7   had heard this a few times.
8             Approximately how many times were you
9   aware that there had been some type of delay in
10  getting teletype information from the teletype
11  office or the teletype department to the Fugitive
12  Squad at MPD?
13       A    At least I would -- I've heard that at
14  least ten times a month at least.  You would
15  have -- because keep in mind we deal with a lot of
16  fugitives, so, you know, sometimes I would call
17  over to get the disposition or -- or a
18  jurisdiction will call me and say can you tell us
19  that the wrong information went to -- they had
20  never -- they had never received information about
21  a defendant being detained or their disposition --
22  their arraignment disposition being sent to them.

1  And when I would call MPD Fugitive Squad, they
2  would always tell me -- or most times tell me that
3  it was a teletype issue.  We had -- we gave the
4  information to teletype and teletype didn't get it
5  out in time or didn't -- you know, I guess they
6  did their part.  We gave it over to teletype or
7  teletype gave us this information and for some
8  reason the jurisdiction didn't get the information
9  I guess in enough time or we didn't -- MPD didn't
10 get the information from teletype in enough time
11 or something.  So we would -- I would always have
12 to give our disposition for -- for cases sometimes
13 directly myself to the jurisdictions because there
14 was some sort of teletype issue.
15         But I'm not sure.  I've never talked to
16 anybody over in the teletype office.  I directly
17 dealt with the MPD Fugitive Squad and they were
18 always professional, always, you know, able to get
19 down to the bottom of it and, you know, reach out
20 to teletype and iron out any issues, so I don't
21 know any information beyond that.
22         Q   Okay.  I'm going to turn now to

Page 41

1  we were just going through, Mr. Vasquez, despite
2  not being the person wanted on the Illinois
3  warrant, was picked up and incarcerated multiple
4  times in D.C.
5          Is this a situation that you have
6  encountered other times?
7      A   You know what?  I have, but I don't have
8  the number for you.
9      Q   Okay.  More than one other time?
10     A   Yes, more than one other time over a
11 14 -- almost 14-year time, yes, yes.
12     Q   More than five?
13     A   No, not -- not continuously being
14 rearrested I don't think more than five.  I don't
15 think more than five.
16     Q   Okay.  But somewhere between, including
17 Mr. Vasquez's case, between two and six instances
18 that you can recall over your 14 years?
19     A   I don't think more than five.
20     Q   Okay.  Between two and five?
21     A   Between two and five.
22     Q   Okay.