**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JOSE T. VASQUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:17-cv-02194 APM** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF JOSE T. VASQUEZ'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL OR FOR REMITTITUR

Creighton R. Magid #476961
DORSEY & WHITNEY LLP
1401 New York Ave., NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax:  (202) 442-3199
Email:magid.chip@dorsey.com

*Counsel for Plaintiff*

Date:  June 24, 2022

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................1

I.      The Fugitive From Justice Charge for a *Different* Jose Vasquez Does Not Justify
        MPD Detention and Incarceration of Plaintiff Jose Vasquez. ...............................1

II.     The Court Properly Excluded Evidence Regarding the Resisting Arrest Charge. ..............6

III.    There is No Basis for a New Trial. ......................................................................9

        A.      The District *Elected* to Allow the Admission of Evidence from Other
                Jurisdictions; It Cannot Now Claim An Evidentiary Error.....................................9

        B.      Plaintiff Vasquez's Damages Testimony Was Proper and Does Not
                Require a New Trial..............................................................................10

        C.      The Court Properly Allowed Testimony Regarding the Duration of
                Plaintiff Vasquez's 2016 Incarceration After the District Opened the Door
                to Such Testimony. ..............................................................................11

        D.      There Was Nothing Improper About Examining Officer Rollins Regarding
                His Sworn Statement that He Had Verified that Plaintiff Vasquez Was the
                Person Sought by Will County. ...............................................................12

        E.      The Court Properly Excluded Testimony Regarding the Secret Service's
                Use of a "Big Rifle" During Its Arrest of Plaintiff Vasquez. ...............................12

        F.      The False Imprisonment Instruction Does Not Warrant a New Trial....................14

        G.      The Court's Damages Instructions Were Appropriate.........................................15

        H.      Plaintiff's Suggestion of Damages in Closing Does Not Warrant a New
                Trial.................................................................................................15

IV.     There Is No Basis for Remittitur of the Jury's $100,000 Damages Award. .....................16

CONCLUSION..............................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971) ........................... 6, 7

*Brown v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 207508, 2012 WL 13214663 (D.D.C. Oct. 1, 2012) .................................................................................................................. 6

*Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986) ................................................. 16

*Curry v. Giant Food Co.*, 522 A.2d 1283 (D.C. 1987) ................................................................ 2

*Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994) ....................... 6, 7

*Hankerson v. North Carolina*, 432 U.S. 233 (1977) .................................................................. 14

*Hardin v. Dadlani*, 221 F. Supp. 3d 87 (D.D.C. 2016) ......................................................... 10, 11

*Henderson v. George Washington Univ.,* 449 F.3d 127 (D.C. Cir. 1993) .............................. 10, 11

*Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87 (D.C. Cir. 1987) .............................................. 16, 18

*Kakeh v. United Plan. Org.*, 587 F. Supp. 2d 125 (D.D.C. 2008) ............................................. 13

*Langevine v. District of Columbia*, 106 F.3d 1018 (D.C. Cir. 1997) ......................................... 16

*Morris v. Pruitt*, 308 F. Supp. 3d 153 (D.D.C. 2018) ................................................................ 15

*People v. Ramirez*, 34 Cal. 3d 541, 668 P.2d 761, 194 Cal. Rptr. 454 (Cal. 1983) ..................... 5

*Queen v. Washington Metro. Area Transit Auth.*, 901 F.2d 135 (D.C. Cir. 1990) ...................... 16

*Sanders v. United States*, 339 A.2d 373 (D.C. 1975) .............................................................. 3, 14

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ............................................................. 4

*Smith v. Café Asia,* 2011 U.S. Dist. LEXIS 124385, 2011 WL 5108489 (D.D.C. Oct. 27, 2011) ................................................................................................................ 7

*State v. Mance*, 82 Wash. App. 539, 918 P.2d 527 (1996) .......................................................... 5

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) .................................................................... 10

*United States v. Valez*, 796 F.2d 24 (2d Cir. 1986) ................................................................. 4, 5

*United States v. Williams*, 836 F.3d 1 (D.C. Cir. 2016) .............................................................. 6

*United States v. Winston*, 447 F.2d 1236 (D.C. Cir. 1971) ....................................................... 10

**Other Authorities**

Restatement (Second) of Torts § 134 (Am. L. Inst. 1965) ........................................................ 2, 14

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................... 7

Fed. R. Civ. P. 8(c) .................................................................................................................. 6

Fed. R. Civ. P. 51(c)(1) .......................................................................................................... 14

Following a trial, which included instructions very favorable to the District of Columbia, the jury returned a verdict finding that the District had wrongly imprisoned plaintiff Jose Vasquez and awarded Mr. Vasquez $100,000 in damages.  The District now seeks to overturn the verdict with a shotgun approach challenging everything from jury instructions the District sought (and to which the District agreed) to the jury's ability to weigh the credibility of witnesses and to award damages.  The District's motion is contrary to the evidence adduced at trial and to the applicable law.  It should therefore be denied.

## ARGUMENT

I.    **The Fugitive From Justice Charge for a *Different* Jose Vasquez Does Not Justify MPD Detention and Incarceration of Plaintiff Jose Vasquez.**

The District argues that because Officer Rollins of the Metropolitan Police Departments Fugitive Unit saw a brief narrative in Plaintiff Vasquez's arrest packet prepared by Officer Sanford of the United States Secret Service that the "Joint Operations Center" had confirmed that Plaintiff Vasquez was the person sought in the warrant from Will County, Illinois, there was no evidentiary basis for jury to find the District liable for false imprisonment.  This is not so, for several reasons.

First, even under the instruction given by the Court, over plaintiff Vasquez's objections, the jury had sufficient evidence to find the District liable for false imprisonment.  Officer Rollins, of the Fugitive Unit, as part of his official duties, prepared and signed a sworn affidavit attesting not only that he had verified that the Will County warrant was still active, *but also that he had verified that plaintiff Vasquez was the person sought in the warrant.*  Trial Tr. (May 10, 2022) at 290:12 – 292:12; Pl. Ex. 16.  In the course of undertaking to verify that it was, in fact, Plaintiff Vasquez whom Will County sought, Officer Rollins reviewed the warrant and specifically read that the warrant sought a person named "Jose Vasquez" with a Social Security

1

number ending in 7680.  *Id*. at 292:24 – 293:12; Pl. Ex. 3.  Additionally, in undertaking to verify

that plaintiff Vasquez was the person sought in the warrant, Officer Rollins printed out and

reviewed the arrest packet for Plaintiff Vasquez, which showed that the person sought by Will

County had a Social Security number ending in 8472.  *Id*. at 293:13 – 294:24; Pl. Ex. 2.  The

Social Security numbers do not match.  Accordingly, the jury could reasonably find that Officer

Rollins "learned that Mr. Vasquez was undoubtedly not the person wanted by the Will County

warrant."  Court's Final Jury Instructions, Trial Tr. (May 11, 2022) at 606:10 – 14.

Second, contrary to the District's assertion, the law does not allow the District to escape

liability by arguing that Officer Rollins ignored clear evidence that Plaintiff Vasquez was not the

person sought by Will County and therefore continued to believe that Plaintiff Vasquez was the

fugitive subject to the warrant.  The District relies on Comment f to the Restatement (Second) of

Torts § 134 (Am. L. Inst. 1965), which states, in pertinent part:

> [T]he privilege to arrest under a warrant depends upon the actor's belief that the
> person arrested is the person named or otherwise described in the warrant with
> such sufficiency as to justify the actor in believing him to be the person intended.
> If, therefore, the actor subsequently learns that the other is undoubtedly not the
> person intended, he must release the other unless the other objects.

Restat. 2d of Torts, § 134, cmt. f.  The accompanying illustration provides:

> A, a peace officer, arrests B, reasonably believing that C has been murdered and
> that B has committed the murder. While A has B in custody, he meets C, who is
> alive and well. A is not privileged to keep B in custody, unless B, on being
> offered his release, desires to be taken before a magistrate.

Restatement (Second) of Torts § 134, cmt f.; *see also Curry v. Giant Food Co*., 522 A.2d 1283

(D.C. 1987) (adopting Restatement).

Here, Officer Rollins learned that Plaintiff Vasquez had a *different* Social Security

number than the "Jose Vasquez" sought in the Will County warrant.  He therefore learned that

Plaintiff Vasquez undoubtedly was not the person sought.  Just as C appears alive and well in the

illustration, the Metropolitan Police Department's own arrest packet arrives on Officer Rollins's computer screen, showing that the person in custody (Plaintiff Vasquez) is different from the "Jose Vasquez" wanted by Will County.  Even if learning that Plaintiff Vasquez had a different (and too different to result from a mere typographical error) Social Security number from the person sought in the warrant somehow could be said to fall short of learning that Plaintiff Vasquez "undoubtedly" was not the person wanted by Will County, District of Columbia law does not allow Officer Rollins's indifference toward the differing Social Security numbers to bar liability for false imprisonment:

> [T]he seizure of an individual other than the one against whom the warrant is outstanding is valid if the arresting officer (1) acts in good faith, and (2) has reasonable, articulable grounds to believe that the suspect is the intended arrestee. *Should doubt as to the correct identity of the subject of the warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual.*

*Sanders v. United States*, 339 A.2d 373, 379 (D.C. 1975) (emphasis added).  Clear evidence that Plaintiff Vasquez was not the person sought by Will County was right before Officer Rollins's eyes – literally, since he testified that he read both the Social Security number in the warrant and the Social Security number in the arrest packet.  The District cannot escape liability merely because Officer Rollins turned a blind eye to the exonerating information.

Third, the Metropolitan Police Department had extensive information establishing that Plaintiff Vasquez was not the person wanted in the warrant.  Plaintiff Vasquez repeatedly and vociferously protested to Metropolitan Police Department officers that he was not the person wanted by Will County, that he had never been to Illinois; and that a photograph of the tattooed person wanted in Illinois existed that clearly distinguished that person from Plaintiff Vasquez. Trial Tr. (May 9, 2022) at 157:3 – 18; 158:22 – 160:3; 181:5 – 10.  Sergeant Mack, the head of the Fugitive Unit, testified that when an arrestee pointed to specific exonerating information,

such as the existence of a photograph, officers at the precinct would be expected to investigate further.  *Id*. at 225:9 – 20; Trial Tr. (May 10, 2022) at 456:3 – 21.

Additionally, the District of Columbia's Justis report on Plaintiff Vasquez, which was available to everyone in the Fugitive Unit, showed that that Plaintiff Vasquez had been arrested on the Will County warrant in 2016 and released.  *Id*. at 221:13 – 19.  The Fugitive Unit maintained a file on Plaintiff Vasquez, which included a printout of a Justis report showing Plaintiff Vasquez's arrest on a fugitive warrant in 2016 and the dismissal of charges on November 3, 2016, court hearing.  *Id*. at 283:1 – 9; Pl. Ex. 4.  That file also included the October 28, 2016, teletype message from the Will County Sheriff's Office notifying the Metropolitan Police Department that Plaintiff Vasquez was not the person wanted in the warrant.  *Id*. at 284: 5 – 9; 286:8 – 13; Pl. Ex. 6.  Additionally, Metropolitan Police Department officers at the precinct took Plaintiff Vasquez's fingerprints and promised to compare them with the fingerprints of the person wanted in Illinois.  *Id*. at 157:7 – 18.  Had they followed up as they had promised, it would have been obvious that Plaintiff Vasquez was not the person sought in the warrant.

During trial, the Court noted the Second Circuit's opinion in *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003), which, in the context of a malicious prosecution claim, quoted the court's previous opinion in *United States v. Valez*, 796 F.2d 24 (2d Cir. 1986), for the proposition that the collective knowledge doctrine "cannot be used to impute to an officer 'facts known to some [other] members of the police force which exonerate an arrestee'" for purposes of establishing *bad faith*.  *Savino*, 331 F.3d at 74 (quoting *Valez*, 796 F.2d at 28).  Bad faith is not at issue in the present litigation.  More pertinent to the instant case is *Valez*, which holds that a failure of law enforcement officers to communicate exonerating information *can* render an

arrest unreasonable, depending on the circumstances.  *See Valez*, 796 F.2d at 28 (the collective

knowledge doctrine "does not support Valez's view that facts known to some members of the

police force which exonerate an arrestee are *ipso facto* imputed to the arresting officer.  Rather,

the issue is whether the failure to communicate these facts to the arresting officer rendered the

mistaken arrest unreasonable.").  *Valez* thus supports imputing the information known to

Metropolitan Police Department officers at the precinct to Officer Rollins and the Fugitive Unit.

The issue has not been decided in the District of Columbia.  Courts outside the Second

Circuit that have addressed the issue have generally held that law enforcement officers are

imputed with the collective knowledge of exonerating information known to their fellow

officers.  For example, the Supreme Court of California has held that law enforcement agencies

are charged with the collective knowledge of their officers with respect to exonerating

information:

> It is settled that an officer in the field may rely on information communicated to
> him by fellow officers to establish probable cause to arrest. However, if we
> impute to the arresting officer the collective knowledge of law enforcement
> agencies for the purpose of establishing probable cause, we must also charge him
> with knowledge of information exonerating a suspect formerly wanted in
> connection with a crime. The "fellow officer" or "collective knowledge" rule
> cannot function solely permissively, to validate conduct otherwise unwarranted;
> the rule also operates prohibitively, by imposing on law enforcement the
> responsibility to disseminate only accurate information.

*People v. Ramirez*, 34 Cal. 3d 541, 547, 668 P.2d 761, 764-765, 194 Cal. Rptr. 454, 458 (Cal.

1983) (internal citations omitted).  The Washington Court of Appeals has reached the same

conclusion.  *See State v. Mance*, 82 Wash. App. 539, 543, 918 P.2d 527 (1996) (agreeing with and

quoting *Ramirez*).

The information known to the Metropolitan Police Department establishing the Plaintiff

Vasquez was not the person sought in the warrant – as well as information that, as acknowledged

by Sergeant Mack, would have led to an investigation that would have established that Plaintiff Vasquez was not the person sought in the warrant – further supports the jury's verdict.

## II.    The Court Properly Excluded Evidence Regarding the Resisting Arrest Charge.

At no point prior to trial did the District of Columbia indicate that it intended to defend against the false imprisonment claim by asserting that it was holding Plaintiff Vasquez on a charge of resisting arrest.  The Court therefore properly precluded the District from raising the defense at trial, since it had not previously provided notice of the purported defense to Plaintiff Vasquez.

Justification is an affirmative defense.  *See, e.g., United States v. Williams*, 836 F.3d 1, 13 (D.C. Cir. 2016).  Fed. R. Civ. P. 8(c) requires a defendant to plead such defenses with sufficient clarity "to put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond to the defenses."  *Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 444 (D.C. Cir. 1994); *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971).  Although such a defense need not be pleaded "with any rigorous degree of specificity," *Daingerfield Island Protective Soc'y*, 40 F.3d at 445, it still must provide enough information to put the plaintiff on notice of the defense.  *Id*. at 444; s*ee also Brown v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 207508, *7, 2012 WL 13214663 (D.D.C. Oct. 1, 2012).  In *Daingerfield Island*, for example, the defendant did not cite a specific statute, but did specifically assert that "Plaintiffs' claims are barred by the applicable statute of limitations."  *Id*. at 444.

In this case, the District never pleaded that it was justified in detaining Plaintiff Vasquez because of the separate charge of resisting arrest.  Although the District argues that it pleaded that "the District and its employees acted in good faith and with the reasonable belief that its actions were lawful under the circumstances," nothing in this statement put Plaintiff Vasquez on

notice that the District would claim that its reason for holding Plaintiff Vasquez was the resisting arrest charge.  The only plausible reading of this defense is that the District claimed that, *in detaining Plaintiff Vasquez on the fugitive warrant*, "the District and its employees acted in good faith and with the reasonable belief that its actions were lawful under the circumstances." Similarly, nothing in its denials to the allegations in the Second Amended Complaint suggest that the District was doing anything more than denying the numbered allegations.

The District further argues that because Plaintiff Vasquez did not object to a redacted version of the arrest packet (Def. Ex. 4), Plaintiff Vasquez somehow waived any objection to the District's previously unannounced defense.  This assertion is directly contrary to Fed. R. Civ. P. 8, *Blonder-Tongue*, and *Daingerfield Island.*  The case the District cites in support, *Smith v. Café Asia,* 2011 U.S. Dist. LEXIS 124385, 2011 WL 5108489 (D.D.C. Oct. 27, 2011), merely holds that objections to *exhibits* after a court-ordered deadline for objections are untimely.  *Café Asia* does not address Rule 8 at all, and says nothing suggesting that a plaintiff must object to all of a defendants' exhibits in order to be afforded the protections of Rule 8.

Additionally, although failure to argue an affirmative defense in a motion for summary judgment may not, itself, constitute a waiver of that defense, the District's failure to raise its affirmative defense in its motion for summary judgment underscores the 11th hour nature of the affirmative defense and highlights the District's failure to raise the affirmative defense until the eve of trial. [FURTHERMORE, Pittston]

Finally, even if the District had a colorable argument that it had given Plaintiff Vasquez notice that it intended to assert the defense that the resisting arrest charge was the reason (or even a reason) the District detained Plaintiff Vasquez – and it does not – there is nothing in the record, either evidence or offers of proof – indicating that anyone at the Metropolitan Police Department

even thought about the resisting arrest charge when detaining Plaintiff Vasquez.  The District points to testimony that someone from the U.S. Secret Service prepared the initial entry in the arrest packet and that it is common practice within the Metropolitan Police Department to "rely" on information in the arrest packet.  Trial Tr. (May 10, 2022) at 405:2 – 15.  There is nothing in the record to indicate whether the U.S. Secret Service indicated any intent to pursue the charge or whether and when the U.S. Secret Service dropped the charge.  There is nothing in the record – or any offer of proof – to the effect that anyone at the Metropolitan Police Department even considered the resisting arrest charge in detaining Plaintiff Vasquez.  By contrast, Plaintiff Vasquez testified at trial that a Metropolitan Police Department officer at the precinct told Plaintiff Vasquez that he was being held "[b]ecause I had committed a murder in Illinois," Trial Tr. (May 9, 2022) at 157:7 – 18; there was no mention of a charge of resisting arrest. Additionally, Plaintiff Vasquez testified that once it became clear to the judge presiding over his case that Plaintiff Vasquez was not the person wanted in the Will County warrant, the judge dismissed the case against Plaintiff Vasquez.  *Id.* at 163:16 – 164:4.  The District concedes that it did not continue to detain Plaintiff Vasquez after dismissal of the fugitive case, which strongly undermines the notion that the resisting arrest charge had anything to do with Plaintiff Vasquez's detention.  Moreover, prior to the Court's ruling, the District *conceded that it had no witness who could testify that the Metropolitan Police Department based its detention of Plaintiff Vasquez on the resisting arrest charge.  Id.* at 23: 4 – 27:25.  In short, not only did the Court properly preclude the District from claiming that the District really was detaining Plaintiff Vasquez on the resisting arrest charge, but there is nothing in the record to support the District's argument that the alleged resisting arrest charge justified the detention of Plaintiff Vasquez.

III.    **There is No Basis for a New Trial.**

A.    **The District *Elected* to Allow the Admission of Evidence from Other Jurisdictions; It Cannot Now Claim An Evidentiary Error**

Following the Court's pretrial instruction, counsel for Plaintiff Vasquez scrupulously avoiding eliciting evidence regarding Plaintiff Vasquez's arrest and detention on the Will County warrant in various Maryland jurisdictions.  It was *counsel for the District* who sought to elicit such testimony, which prompted a warning from the Court that the District was opening the door to further inquiry on the subject.  Trial Tr. (May 9, 2022) at 167:24 – 169:5.  The Court warned counsel for the District a second time:

> So I just want to be clear, Mr. DeBerardinis.  If you start asking even the limited questions about Maryland, you may be opening the door to redirect in which Mr. Magid asks, well, this happened to you in Maryland as you testified.  How did that impact how you felt on – in 2017, okay?
>
> So you're forewarned.  I've tried to balance the issues here with how we did it pretrial.  If you want to open the door on this with the questions you're planning to ask, just know I might allow something in that otherwise you've fought thus far to keep out, okay?

*Id*. at 173:5 – 15.

Notwithstanding the Court's warning, the District proceeded to ask questions of Plaintiff Vasquez regarding his arrests and detentions in Maryland over the years.  *Id*. at 173:24 – 174:24. The Court properly ruled that this opened the door to questions regarding the disposition of the Maryland cases on redirect.  *Id*. at 174:11- 12.  Indeed, counsel for the District *acknowledged* that he was opening the door to such redirect.  *Id*. at 174:10.  Similarly, the Court allowed testimony regarding the duration of Plaintiff Vasquez's 2016 detention only after the District opened the door to such testimony.  *Id*. at 189:7 – 16.  Having opened the door to such evidence, the District cannot now claim that it is entitled to a new trial due to the admission of evidence regarding the disposition of the Maryland cases.  *See, e.g., Henderson v. George Washington*

*Univ.,* 449 F.3d 127, 140-141 (D.C. Cir. 1993) ("not only is the trial court granted discretion to permit a party to introduce otherwise inadmissible evidence on an issue 'when the opposing party has introduced inadmissible evidence on the same issue,' but it may also do so "when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.'") (quoting *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993); *Hardin v. Dadlani*, 221 F. Supp. 3d 87, 101 (D.D.C. 2016) ("The doctrine of 'curative admissibility' allows a party to elicit 'testimony not admissible on direct, on the ground that the other party has opened the doors' to such testimony.") (quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971)).

**B.    Plaintiff Vasquez's Damages Testimony Was Proper and Does Not Require a New Trial.**

The Court properly allowed Plaintiff Vasquez to testify as to his detention by the District in March 2017.  This detention continued until Plaintiff Vasquez was released sometime on the afternoon of March 4, 2017.  Even if compensable damages only began at 10:00 am on March 4, as the Court ruled at the charge conference, the District undeniably detained Plaintiff Vasquez for several more hours.  Moreover, as the Court noted, Plaintiff Vasquez's emotional damages did not suddenly cease when he was released by the Court on March 4, 2017, they continued for some period thereafter.  At the charge conference, the Court properly noted that "whatever emotional turmoil and distress he may have felt in the days afterwards is fair game, as opposed to just what he felt on March the 4th."  Trial Tr. (May 10, 2022) at 586:8 – 10.  Additionally, Plaintiff Vasquez's damages did not occur in a vacuum; his damages after 10:00 am on March 4 very much reflected his experiences prior to 10:00 am on that date.  As the Court observed: "[Y]ou take the plaintiff as he comes.  The fact that he had been arrested previously and detained

previously affected him." *Id*. at 510:10 – 12.  There was no error in admitting testimony as to Plaintiff Vasquez's experience in the District's custody on both March days.[1]

### C. The Court Properly Allowed Testimony Regarding the Duration of Plaintiff Vasquez's 2016 Incarceration After the District Opened the Door to Such Testimony.

The District again seeks a new trial on the basis of testimony – this time, pertaining to the length of Plaintiff Vasquez's 2016 incarceration – that the Court allowed to be elicited on redirect after the District consciously opened the door to such testimony.  Again, the District cannot claim error because its strategic decision to open the door to such testimony apparently did not work out.

As noted above, the Court clearly and repeatedly explained to the District's counsel the consequences of the District inquiring into Plaintiff Vasquez's prior arrests based on the fugitive warrant.  The District made a deliberate decision to proceed, acknowledging that doing so would open the door to evidence that the Court had previously excluded.  The Court therefore held that the District had opened the door on redirect.  *See, e.g*., Trial Tr. (May 9, 2022) at 189:13 – 15 ("You opened the door to all of this, Mr. DeBerardinis. I've warned you fully about what was going to happen if you started asking these questions.").  As explained above, the District, having opened the door to such evidence, cannot now claim that it is entitled to a new trial due to the admission of evidence regarding Plaintiff Vasquez's 2016 detention.  *See, e.g., Henderson,* 449 F.3d at 140-141; *Hardin*, 221 F. Supp. 3d at 101.

---

[1]    Indeed, the District has repeatedly characterized this case as involving "20 hours of damages."

**D.   There Was Nothing Improper About Examining Officer Rollins Regarding His Sworn Statement that He Had Verified that Plaintiff Vasquez Was the Person Sought by Will County.**

The District next claims that it was error to examine Officer Rollins regarding what he did and didn't do to verify that Plaintiff Vasquez was the person sought in the Will County warrant.  This argument, too, is baseless.

Officer Rollins instituted prosecution of a fugitive claim against Plaintiff Vasquez by submitting to the Superior Court a sworn affidavit that he had prepared and signed attesting that Plaintiff Vasquez was the person sought in the warrant and that Plaintiff Vasquez "is a Fugitive from the State of Illinois."  Trial Tr. (May 10, 2022) at 290:12 – 292:12; Pl. Ex. 16.  Because one of the elements of a malicious prosecution claim is probable cause, Trial Tr. (May 11, 2022) at 607:6 – 13 (jury instruction), inquiring into the basis – or lack of basis – for the prosecution was entirely appropriate.  Additionally, establishing that Officer Rollins had, in fact, read the differing Social Security numbers found in the arrest packet and in the warrant was probative of whether Officer Rollins "learned that Mr. Vasquez was undoubtedly not the person wanted by the Will County warrant."  *Id*. at 606:10 – 14 (jury instructions).  Moreover, whether Officer Rollins did, in fact, undertake measures to verify that Plaintiff Vasquez was the person sought by Will County was relevant to his credibility, particularly since he had submitted a sworn affidavit confirming that Plaintiff Vasquez was the person sought in the warrant.  Merely pointing out, as the District does, that such testimony would also have been useful in a negligence case does not mean that that the evidence was improperly admitted.

**E.   The Court Properly Excluded Testimony Regarding the Secret Service's Use of a "Big Rifle" During Its Arrest of Plaintiff Vasquez.**

The District's next argument is that the Court improperly sustained Plaintiff Vasquez's objection to a question asking whether, in the course of arresting Plaintiff Vasquez, the Secret

Service officer had "pulled out a big rifle and pointed it right at you while you were on the ground?" Trial Tr. (May 9, 2022) at 176:17 – 178:19. The Court's ruling was proper, and does not provide a basis for a new trial.

First, the evidence was not relevant. The Court allowed the District, over Plaintiff Vasquez's objections, to inquire into the Secret Service's arrest of Plaintiff Vasquez. The alleged use of a "big rifle," which is not reflected in the arrest report, has no relevance to any of the issues in the case. Although the District points to case authority allowing exploration of a plaintiff's "psychological status and history" when the plaintiff claims generalized, long-term psychological harm, *Kakeh v. United Plan. Org.*, 587 F. Supp. 2d 125, 128 (D.D.C. 2008), Plaintiff Vasquez made no such claim of generalized, long-term psychological harm. Instead, Plaintiff Vasquez testified to his anguish that Metropolitan Police Department officers were seemingly willing to overlook evidence proving that he was not the person sought in the warrant and his fear that he would not see his family again. Trial Tr. (May 9, 2022) at 160:18 – 25; 162:10 – 14. The manner in which he was arrested, whether a gun was involved, and whether the gun was big or small has no relevance to the specific damages claims made by Plaintiff Vasquez.

Second, testimony regarding the use of a "big rifle" would have been unfairly prejudicial to Plaintiff Vasquez. As the Court noted, allowing inquiry into the "big rifle" would suggest to the jury "that somehow he brought it upon himself to have the gun pulled on him. And it's a backdoor way, arguably, of having the jury think that he did something wrong during that arrest." *Id*. at 178:16 – 19. Even if *some* testimony regarding the arrest were permissible to address Plaintiff Vasquez's emotional damages, testimony regarding Secret Service agents pointing a "big rifle" at Plaintiff Vasquez's head was properly excluded for the improper

13

inferences such testimony would raise as to whether Plaintiff Vasquez acted wrongfully during his arrest.

Excluding the single question regarding a "big rifle" was both entirely proper and provides no basis for a new trial.

### F.     The False Imprisonment Instruction Does Not Warrant a New Trial.

Over Plaintiff Vasquez's strenuous objection, the Court crafted an instruction on the false imprisonment claim at the District's urging that greatly limited the circumstances under which the District could be found liable for false imprisonment.  The District now argues that the instruction was not limited enough.  There is no merit to the District's argument.

First, as explained above, far from prejudicing the District, the instruction was excessively favorable to the District, since it did not include the Metropolitan Police Department's obligation to make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual" in the face of information casting doubt on Plaintiff Vasquez being the person sought in the warrant.  *See, e.g., Sanders*, 339 A.2d at 379.

Second, the District's criticism of the word "duty" in the instruction rings hollow when the same word appears both in the District's proposed instruction and in Comment f to the Restatement (Second) of Torts § 134, which the District urged the Court to follow in instructing the jury.

Third, and perhaps most importantly, the District waived any claim of error when it failed to object to the instruction at trial.  Trial Tr. (May 11, 2022) at 572:24 – 573:2 (declaring that the Court's instruction is "satisfactory").  The District may not now raise an objection to the instruction, not only because the District failed to object to the instruction at trial as required by Fed. R. Civ. P. 51(c)(1), but also because the District affirmatively embraced the instruction as "satisfactory."  *See Hankerson v. North Carolina*, 432 U.S. 233, 244 n.8 (1977) ("failure to

14

object to a jury instruction is a waiver of any claim of error."); *Morris v. Pruitt*, 308 F. Supp. 3d 153, 174 (D.D.C. 2018) ("EPA already waived such argument by failing to raise any objection to the jury instruction at trial.").

G. **The Court's Damages Instructions Were Appropriate.**

The Court clearly and unequivocally instructed the jury that it "may not award Mr. Vasquez any damages from any harm that arose prior to the handling of his case by the MPD Fugitive Unit."  The District speculates that the jury may have been confused by a different instruction outlining the general nature of the false imprisonment claim and further speculates that the instruction "explains why the jury awarded Plaintiff $100,000," and seeks a new trial.

Apart from the fact that the District's claims of error are based solely on speculation – as noted above, the jury had ample evidence from which it could find Plaintiff Vasquez to have suffered damages on March 4, 2017, and in the "ensuing days" – the District has waived any argument regarding the appropriateness of the instructions by failing to object to them at trial. *See Morris*, 308 F. Supp. 3d at 174.

H. **Plaintiff's Suggestion of Damages in Closing Does Not Warrant a New Trial.**

Unaware that District law precludes suggesting appropriate compensation to the jury, counsel for Plaintiff Vasquez suggested an amount.  The Court immediately gave a curative instruction to the jury stating that the jury was to "ignore the argument about a specific amount." Trial Tr. (May 11, 2022) at 628:11 – 12.  The Court went further and told the jury, "It was not an argument that ought to have been made; that's why I sustained the objection."  *Id*. at 628:12 – 13.  The Court went further still and instructed the jury that "[t]he decision about damages, if you are to award them and how much, that's your decision and your decision alone, okay?"  *Id*. at 628:13 – 15.  This fully cured the issue.

*Queen v. Washington Metro. Area Transit Auth.*, 901 F.2d 135, 140 (D.C. Cir. 1990), makes it clear that "in order to constitute reversible error, a counsel's request for specific compensation must cause actual prejudice." There is no evidence here that the jury disregarding the Court's curative instruction, or that the request for specific compensation caused any actual prejudice. The jury plainly disregarded counsel's suggestion. The District offers only conjecture that the suggestion, amply cured by the Court, had any effect on the jury. There is no basis for awarding a new trial.

## IV.    There Is No Basis for Remittitur of the Jury's $100,000 Damages Award.

The Court of Appeals for the D.C. Circuit has made it clear that "courts may not set aside a jury verdict merely deemed generous; rather, the verdict must be so unreasonably high as to result in a miscarriage of justice." *Langevine v. District of Columbia*, 106 F.3d 1018, 1024 (D.C. Cir. 1997). Consequently, "a jury's determination of damages may only be disturbed if it 'is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.'" *Id.* (quoting *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 96 (D.C. Cir. 1987)). To avoid impinging on the Seventh Amendment right to a jury trial, remittitur of jury verdicts is appropriate "only if the reduction 'permits recovery of the highest amount the jury tolerably could have awarded.'" *Id.* (quoting *Carter v. District of Columbia*, 795 F.2d 116, 135 n.13 (D.C. Cir. 1986)). Of particular note here, the Court of Appeals in *Langevine* emphasized that "[a] court must be especially hesitant to disturb a jury's determination of damages in cases involving intangible and non-economic injuries." *Id.*

The jury's award certainly was not "so unreasonably high as to result in a miscarriage of justice." *Langevine*, 106 F.3d at 1024. The jury could reasonably have arrived at that figure based on Plaintiff Vasquez's fear – quite reasonable given his prior arrests and incarcerations, and the assertion by Metropolitan Police Department that they had checked and verified that

16

Plaintiff Vasquez was "the murderer" and "was lying" – that the Metropolitan Police Department was "going to keep me in jail for the rest of my life."  Trial Tr. (May 9, 2022) at 157:7 – 18; 160:18 – 25; 162:1 – 3.

Plaintiff Vasquez's situation is unique, and not at all analogous to other false imprisonment cases.  As the Court observed:  "The fact that he had been arrested previously and detained previously affected him."  *Id*. at 510:10 – 12.  Additionally, the fact that Plaintiff Vasquez pointed to specific, exonerating evidence, yet was told by officers of the Metropolitan Police Department that they had checked that evidence and found him to by "lying" and "a murderer" added a particularly frightening, Kafkaesque element to his detention.

The District's assertion that Plaintiff Vasquez was only in custody for "three hours" between the time Officer Rollins "ran the NCIC search" and "presented the complaint to the prosecutor" – and therefore supposedly was awarded damages of "over $33,000 for each hour" – mischaracterizes the record.  Officer Rollins received the lock-up list at 10:00.  Trial Tr. (May 10, 2022) at 349:22 – 23.  Plaintiff Vasquez's court appearance wasn't until sometime in the late afternoon.  Moreover, as the Court has noted, Plaintiff Vasquez's damages didn't simply vanish the moment he was released from Metropolitan Police Department custody – they would have continued for some time thereafter.

Finally, the District offers only rank speculation that the jury award was based on something other than "the harm Plaintiff experienced in a Superior Court cellblock."  There is no indication that this is so.  The District's speculation is insufficient reason to interfere with Plaintiff Vasquez's Seventh Amendment right to a jury trial.

Because the jury had a more than sufficient basis for awarding Plaintiff Vasquez $100,000, and because that sum is not "so inordinately large as obviously to exceed the

maximum limit of a reasonable range within which the jury may properly operate," *Jeffries*, 822 at 96, the District's request for remittitur must be denied.

## **CONCLUSION**

For the reasons set forth above, the District's motion should be denied and judgment should be entered in favor of Plaintiff Vasquez in the amount of $100,000.

Dated: June 24, 2022                    Respectfully submitted,

*/s/* Creighton R. Magid
Creighton R. Magid #476961
DORSEY & WHITNEY LLP
1401 New York Ave., NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax:  (202) 442-3199
Email:magid.chip@dorsey.com

*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 24th day of June, 2022, a copy of the foregoing

PLAINTIFF JOSE T. VASQUEZ'S OPPOSITION TO DEFENDANT'S RENEWED MOTION

FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL

OR FOR REMITTITUR was filed electronically with the Clerk of Court for the United States

District Court for the District of Columbia using the CM/ECF system and accomplished service

via the same.

/s/ Creighton R. Magid
Creighton R. Magid